Robert J. VERNER a/k/a Robert John Verner, Plaintiff,

v.

STATE OF COLORADO, Supreme Court of State of Colorado, Board of Continuing Legal Education of the State of Colorado, Colorado State Board of Law Examiners, Grievance Committee of the Supreme Court of the State of Colorado, Paul V. Hodges, George Lohr, Jean Dubofsky, Luis D. Rovira, Joseph R. Quinn, Robert B. Lee, William H. Erickson, James R. Carrigan, Edward E. Pringle, Donald E. Kelley, Edward C. Day, James H. Klein, James E. Bye, Marvin Stone, Donald Abram, Mark FulFord, Janet Roberts, Ted Manning, Dr. Thurston E. Manning, Cathryn Ables, James P. Holloway, and Any Other Unknown Parties, Defendants.

Civ. A. No. 81–K–1358.

United States District Court, D. Colorado.

March 4, 1982.

As Amended March 19, 1982.

Robert J. Verner, pro se.

R. Michael Mullins, Asst. Atty. Gen., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

As far as it is possible to determine through a computer search, this is a case of first impression in the United States. It is an action claiming over nine million dollars in damages and injunctive relief, pursuant to 42 U.S.C. § 1983, for the alleged violation of the plaintiff's first, sixth, eighth, thirteenth and fourteenth amendment rights, by the defendants, in suspending the plaintiff from practicing law due to his failure to comply with the requirements of Col.R.Civ.P. 260 ("rule 260"). This court has jurisdiction pursuant to 28 U.S.C. § 1343(3).[1] Rule 260 requires Colorado practicing attorneys and judges to complete a specified amount of continuing legal education. After a hearing on May 16, 1981, the defendant-Board of Continuing Legal Education of the State of Colorado ("C.L.E.-board") unanimously found that the plaintiff had failed to comply with rule 260's mandatory continuing legal education requirements and it entered its findings with the defendant-Supreme Court of the State of Colorado ("Colorado Supreme Court"). On August 21, 1981, the Colorado Supreme Court, en banc, ordered the plaintiff suspended from practice based on the C.L.E.-board's findings. This case is before me on the defendants' motion to dismiss pursuant to F.R.Civ.P. 12(b)(1) and (6).

## I. SUBJECT MATTER JURISDICTION

The Tenth Circuit distinguishes between two types of challenges to attorney disciplinary or admission procedures for jurisdictional purposes. If an action challenges the constitutionality of the state's adoption or administration of a particular rule or regulation, federal district courts have jurisdiction over the action. However, if the action is one seeking review of an order affecting a particular attorney, it may only be reviewed by writ of certiorari to the United States Supreme Court, even if the challenge is anchored to alleged deprivations of constitutionally protected rights. *See Phelps v. Kansas Supreme Court*, 662 F.2d 649, 651 (10th Cir. 1981); *Younger v. Colorado State Board of Law Examiners*, 625 F.2d 372, 375–76 (10th Cir. 1980); *Doe v. Pringle*, 550 F.2d 596, 597–99 (10th Cir. 1976). Accordingly, this court only has jurisdiction to consider the plaintiff's challenges to the constitutionality of rule 260. All of the plaintiff's claims that are addressed to the defendants' conduct during the disciplinary proceedings, such as that the C.L.E.-board and the Colorado Supreme Court acted with prejudice and failed to consider evidence of the plaintiff's good conduct, are dismissed for want of jurisdiction.

## II. IMMUNITIES

### A. THE ELEVENTH AMENDMENT

The Eleventh Amendment to the United States Constitution provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state." States and their agencies may not be sued in federal court directly or in their own names for damages or for injunctive or declaratory relief by virtue of the eleventh amendment. *See* Nachmod, *Civil Rights and Civil Liberties Litigation*, § 5.08 (1979). The Supreme Court has interpreted this amendment also to bar suits against a state in federal courts brought by citizens of the defendant state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

---

1. The plaintiff also asserts a claim solely against the defendant, James Holloway, for harassment which this court has power to consider under the doctrine of pendent jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The plaintiff claims that § 1983 actions in federal court against states are not subject to any bars after the Supreme Court's decision in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *overruling in part Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). There are two traditional obstacles to suing states in federal courts under 42 U.S.C. § 1983: (1) The eleventh amendment bar against suing states in federal court; and (2) judicial interpretations of § 1983 holding that states are not "persons" within the meaning of the statute.[2] *See e.g. Coopersmith v. Supreme Court, State of Colorado*, 465 F.2d 993, 994 (10th Cir. 1972), where the Tenth Circuit held, in reliance on *Monroe v. Pape, supra*, that states are not "persons" under § 1983.

In *Edelman v. Jordan*, 415 U.S. 651, 675–77, 94 S.Ct. 1347, 1361–62, 39 L.Ed.2d 662 (1974), the Supreme Court held, without explication, that congress did not intend to waive the states' eleventh amendment immunity through 42 U.S.C. § 1983. In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452, 96 S.Ct. 2666, 2669, 49 L.Ed.2d 614 (1976), the court explained its result in *Edelman*: because § 1983 excludes cities as persons, "it could not have been intended to include states as party-defendants" and it therefore was not intended to abrogate the states' eleventh amendment immunity. In *Fitzpatrick*, the court held that congress intended to abrogate the states' eleventh amendment immunity through the 1972 amendments to Title VII of the Civil Rights Act of 1964. The court noted that congress possessed the power under § 5 of the fourteenth amendment, to override the states' constitutional immunity.

The plaintiff argues that the Supreme Court's decision in *Monell*, overruling *Monroe v. Pape, supra*, and holding that cities are now persons under § 1983, weakens previous rationale for both excluding states as "persons" and for presuming that congress did not intend to abrogate the states' eleventh amendment immunity through § 1983. *See Hutto v. Finney*, 437 U.S. 678, 703, 98 S.Ct. 2565, 2580, 57 L.Ed.2d 522 (1978) (Brennan, J., concurring). While there is a strong argument that states are "persons" under § 1983 after *Monell, see Marrapese v. State of Rhode Island*, 500 F.Supp. 1207, 1209–12 (D.R.I.1980), the Supreme Court has reaffirmed the holding that § 1983 was not intended to override the states' eleventh amendment immunity in *Quern v. Jordan*, 440 U.S. 332, 338–49, 99 S.Ct. 1139, 1143–49, 59 L.Ed.2d 358 (1979). In *Quern*, the majority reasoned that a clear showing of congressional purpose is required before the court will find an intent to abrogate the states' eleventh amendment immunity. The majority found that congress, in enacting § 1983, did not clearly demonstrate its intent to abolish the states' eleventh amendment immunity as it had in enacting Title VII, *see Fitzpatrick v. Bitzer, supra*, and the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, *see Hutto v. Finney, supra*.

The plaintiff further claims that the State of Colorado has waived its eleventh amendment immunity by virtue of its partial waiver of its common law state sovereign immunity against being sued in state court. Assuming, *arguendo*, that the state's partial waiver of sovereign immunity is even applicable to this type of action,[3]

---

**2.** 42 U.S.C. § 1983 provides:

Every *person* who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (Emphasis added.)

**3.** C.R.S. § 24–10–108 (1973) provides that sovereign immunity is a defense except as provided in C.R.S. §§ 24–10–104, 24–10–106. § 24–10–104 waives sovereign immunity for public entities which provide insurance coverage against liability for the type of damage which occurred. § 24–10–106 waives sovereign immunity for liability resulting from certain operations and dangerous conditions. *Cf. Marrapese v. State of Rhode Island, supra*, at 1212–1224.

a state's waiver of its immunity against suit in its own courts does not constitute a waiver of its eleventh amendment immunity against suit in federal court. *Edelman v. Jordan, supra*, 415 U.S. at 677 n.19, 94 S.Ct. at 1363 n.19.

■ Accordingly, the plaintiff's § 1983 claims against the State of Colorado and its named agencies (C.L.E.-board, Colorado Supreme Court, Colorado State Board of Law Examiners and the Grievance Committee of the Colorado Supreme Court), are barred by the eleventh amendment.

■ The plaintiff's § 1983 claims against the named individual state officials[4] require a different analysis. In federal actions naming state officials as party-defendants, it is important to determine whether the suit is essentially against the state and therefore barred by the eleventh amendment. State officials may be sued in their personal capacity for damages in a federal action because the eleventh amendment grants them no immunity even when they are acting in their official capacity. *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). Such federal actions are deemed actions against the individual officials and not against the state. However, when an action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke the eleventh amendment bar, even though individual officials are nominal defendants. *Edelman v. Jordan, supra; Ford Motor Company v. Department of Treasury of the State of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

Further, the Supreme Court recognizes an exception to the eleventh amendment bar in actions for equitable relief against state officials.[5] *See Ex Parte Young*, 209 U.S. 123, 125, 28 S.Ct. 441, 442, 52 L.Ed. 714 (1908). The court justifies this exception by utilizing a legal fiction that the individual and not the state is being sued since the use of the state's name by a state official to enforce an unconstitutional act is a proceeding without the state's authority and does not affect the state in its sovereign or governmental capacity. *Id.* at 159–60, 28 S.Ct. at 453–54.

■ In the instant case, the plaintiff's damage claims against the named state officials are not barred by the eleventh amendment since the plaintiff requests damages from these defendants and not merely a recovery of state funds. Further, the plaintiff's claims for equitable relief from these officials, while essentially requesting injunctive relief from the state itself, are not barred by the eleventh amendment.

### B. JUDICIAL AND QUASI-JUDICIAL IMMUNITIES

■ The plaintiff claims that the individual defendants' common law immunities are superseded by § 1983. However, the Supreme Court has held that congress did not intend to "abolish wholesale all common law immunities" in enacting § 1983, and it recognizes absolute legislative, *see Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1976), prosecutorial, *see Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and judicial, *see Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), immunities from damage liability. The scope of the judicial immunity extends to all judges' acts that are committed within or even in excess of jurisdiction, but not where an act is a non-judicial act or where there is a clear absence of jurisdiction over the subject matter. *See Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 53 L.Ed.2d 331 (1978); *Pierson v. Ray, supra; Bradley v. Fisher*, 80 U.S. (13 Wall)

---

4. The named individual defendants in the plaintiff's § 1983 action are either Colorado Supreme Court justices, C.L.E.-board members or members of the state board of law examiners.

5. For an analysis of the difference between permissible equitable relief and equitable relief which resembles monetary relief and is therefore barred *see Edelman v. Jordan, supra*. In the instant case, the plaintiff's injunctive relief claims against the individual officials do not resemble monetary claims and are, therefore, not barred by the eleventh amendment.

335, 351–52, 20 L.Ed. 646 (1871). For immunity purposes, an act is not performed in the absence of jurisdiction if the act has "more or less connection with the general matters committed by law" to the judge's supervision. *See Spalding v. Vilas*, 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1846); *Simons v. Bellinger*, 643 F.2d 774, 786 (D.C.Cir.1980). "The factors determining whether an act by a judge is a judicial one relate to the nature of the act itself, i.e., whether it is a function usually performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman, supra*, 435 U.S. at 360, 98 S.Ct. at 1106.

In the instant case the plaintiff claims that any potentially available judicial immunities are inapplicable because the individual justices acted both "in clear absence of all jurisdiction" and performed non-judicial acts. However, I find that the plaintiff's argument is without merit. First, there is no question that the individual Colorado Supreme Court justices have jurisdiction to enter attorney disciplinary orders against Colorado attorneys and specifically had jurisdiction to enter the suspension order against the plaintiff in the instant case. *See Bradley v. Fischer, supra; Mayes v. Honn*, 542 F.2d 822, 823 (10th Cir. 1976). Further, these functions are normally performed by judges to the reasonable expectation of all parties and involve judges in their judicial capacity. Accordingly, the defendant-justices' acts are also judicial acts and are within the scope of their absolute judicial immunity.

In addition, the individual C.L.E.-board members and the members of the Colorado State Board of Law Examiners have absolute quasi-judicial immunities from damage liability. While the doctrine of quasi-judicial immunity for officials acting as "an integral part of the judicial process" is extremely limited, *see generally* Nachmod, *supra*, at § 7.08, courts, including the Tenth Circuit, have consistently extended immunities to committees and boards that institute and administer bar-related prosecutions.

*See Simons v. Bellinger*, 643 F.2d 774, 777–786 (D.C.Cir.1980) and cases collected therein at 779; *Mayes v. Honn*, 542 F.2d 822, 824 (10th Cir. 1976).

In *Simons v. Bellinger, supra*, the D.C. Circuit derived a quasi-judicial immunity for members of the D.C. Committee on Unauthorized Practice of Law from Supreme Court decisions on judicial immunity, prosecutorial immunity and on immunity for executive officials participating in the administrative adjudicatory process. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). That circuit court emphasized the need to examine the nature of the officials' work, not merely status or title, in determining whether absolute immunities exist. The circuit court observed that the nature of the committee's work, in instituting and adjudicating attorney-disciplinary proceedings, is "functionally comparable" to work performed by judges and prosecutors and the court therefore extended an absolute immunity from damage liability to the committee members.

In the instant case, the C.L.E.-board members institute and adjudicate disciplinary proceedings involving violations of the C.L.E. requirements. This work is also "functionally comparable" to that performed by judges and prosecutors. Accordingly, the individual C.L.E.-board members are therefore entitled to an absolute immunity from damage liability for their acts performed in connection with these proceedings. Further, the individual members of the state board of law examiners, to the extent they even participate in C.L.E. violation proceedings as alleged, are also absolutely immune from damage liability for the same reasons.

## C. QUALIFIED IMMUNITY

The individual defendants also claim that the plaintiff's § 1983 damage claims are barred by qualified immunities available to government officials. *See generally* Nachmod, *supra*, at § 8.01–15. The qualified immunity defense has two parts: an objective part requiring reasonable grounds for the defendant's belief in the legality of the

challenged conduct and a subjective part requiring good faith in fact. *Id.* *See Wood v. Strickland*, 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975). However, the qualified immunity defense is an affirmative defense which the defendants must plead and have the burden to prove by a preponderance of evidence. *Gomez v. Toledo*, 446 U.S. 635, 639–41, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Accordingly, the qualified immunity defense comes into play only after the plaintiff has established a *prima facie* case of constitutional deprivation. Therefore, the determination of the applicability of the qualified immunity defense is inappropriate on a motion to dismiss. Moreover, my determination that the plaintiff's damage claims against the individual defendants are barred by absolute immunities obviates the need to determine the appropriateness of qualified immunities in any event.

■ After consideration of subject matter jurisdiction and immunities, it remains to be determined whether the plaintiff's claims for injunctive relief [6] against the individual defendants challenging the constitutionality of rule 260 and the plaintiff's harassment claim against James Holloway state claims upon which relief may be granted.

### III. THE PLAINTIFF'S CLAIMS

### A. FOURTEENTH AMENDMENT

### 1. SUBSTANTIVE DUE PROCESS

■ The plaintiff claims that rule 260's requirements are arbitrary and have little to do with an attorney's proficiency in the practice of law. I note at the outset that it is unnecessary to enter into a discussion whether the practice of law is a "right" or "privilege" for the purposes of a due process analysis. According to the Supreme Court:

Regardless of how the state's grant of permission to engage in this occupation is characterized, it is sufficient to say that a person cannot be prevented from practicing except for valid reasons. Certainly the practice of law is not a matter of the state's grace.

*Schware v. Board of Law Examiners of New Mexico*, 353 U.S. 232, 238 n.5, 77 S.Ct. 752, 756 n.5, 1 L.Ed.2d 796 (1957). A person's "right" or "privilege" in the practice of law, however, has never been among those held to be "fundamental" so only minimal scrutiny under the rational basis test is required to evaluate claims of deprivation of such a "right" without due process. *See Ostroff v. New Jersey Supreme Court*, 415 F.Supp. 326, 328 (D.N.J.1976). The Supreme Court has stated, in the context of evaluating bar admission requirements, that:

A state can require high standards of qualification such as good moral character or proficiency in the law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law.

*Schware v. Board of Law Examiners of New Mexico, supra*, 353 U.S. at 239, 77 S.Ct. at 756.

Under this reasoning, courts in the Tenth Circuit and others have consistently upheld strict legal proficiency [7] related bar admission requirements under the rational basis or connection test. *See, e.g., Younger v. Colorado Board of Law Examiners*, 625 F.2d 372 (10th Cir. 1980) (upholding Colorado's restriction against taking the bar examination more than two times); *Galahad v. Woods*, 81–M–1104 (D.Colo., Jan. 12, 1982) (upholding Colorado's bar examination grading standard "C" which mandates a failing score for bar applicants who fail more than three essays despite high overall

---

6. Judicial and qualified immunities are only applicable to damage liability and do not bar claims for injunctive or declaratory relief. *Timmerman v. Brown*, 528 F.2d 811, 814 (4th Cir. 1975).

7. Courts examining moral and character related requirements have had less consistent results. *See e.g., Konigsburg v. State Bar of California*, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); *Schware v. Board of Law Examiners of New Mexico, supra.*

scores); *Chaney v. California*, 386 F.2d 962 (9th Cir. 1967) (upholding California's essay-type bar examination format); *Hacklin v. Lockwood*, 361 F.2d 499 (9th Cir. 1966) (upholding Arizona's requirement that applicants to the bar be graduates from accredited law schools).

If states can set strict legal proficiency related requirements for admission to the bar, it follows that they may also set strict proficiency related requirements for continuing legal practice. There is no doubt that the state has a substantial interest in also regulating the continuing practice of law within its borders and may establish rules and regulations for the practice of law within its jurisdiction. *Bedrosian v. Mintz*, 518 F.2d 396, 400 (2d Cir. 1975); *see Martin v. Walton*, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961). Further, attorneys failing to comply with such requirements may validly be suspended or disbarred,[8] so long as these rules and regulations are rational. *See generally* Annotation *Suspension or revocation of medical or legal professional license as violating due process-federal cases*, 98 L.Ed. 851.

In the instant case, the challenged rule's purpose is to increase the professional competence of registered attorneys and judges. *See* Rule 260.4.[9] The rule attempts to achieve this purpose by requiring practicing attorneys and judges to engage in "organized activity dealing with subject matter directly related to the practice of law or the performance of judicial duties." *Id.* The rule's requirements can be satisfied through formal classroom instruction and education-al seminars and also through "such educational activities as video tape and audio tape presentations; preparation of articles, papers, books and other such written materials; self-administered courses and testing and other "meritorious learning experiences." *Id.* Under any of the descriptions of "rationality" used by the Supreme Court, *see* Nowak, *Constitutional Law*, Pt. 3, Ch. 13, § IV, P.404–410 and cases cited therein (1978), I find that the plaintiff has failed to state a claim that rule 260 requirements are irrational and thereby violative of the substantive due process guarantees.

The plaintiff's remaining claims border on the frivolous and are also dismissed. *Cf. Attwell v. Nichols*, 608 F.2d 228 (5th Cir. 1979).

## 2. PROCEDURAL DUE PROCESS

The plaintiff has in several sections of his complaint alleged that rule 260 violates procedural due process. A reading of the rule demonstrates that this claim is without merit. Rule 260 explicitly provides for notice and a full hearing before disciplinary action can be taken. *Cf. Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Those accused of noncompliance have the right to counsel, to call witnesses, to make objections and to have a complete record made of the proceedings. The hearings are conducted in accordance with the Colorado Rules of Civil Procedure. *See* Rule 260.6(5)—(9). The plaintiff also claims that rule 260 does not specify the sanctions to be imposed for violations, al-

---

**8.** For a listing of cases involving grounds relied on by states for suspending or disbarring attorneys see the following annotations: *Homicide or assault as ground for disciplinary measures against attorney*, 21 A.L.R.3d 887; *Conviction of crime involving moral turpitude as proof of grounds for disbarment where conviction itself is not an independent cause*, 81 A.L.R. 1196; *Misconduct other than criminal as ground for disbarment or suspension of attorney from practicing in federal court or before federal administrative agencies*, 94 L.Ed. 130, 3 L.Ed.2d 1960; *Moral delinquency or other conduct not affecting court or client as ground for disbarment or suspension of attorney*, 9 A.L.R. 189, 43 A.L.R. 107, 55 A.L.R. 1373; *Sexual misconduct as ground for disciplinary action against*

attorney, 36 A.L.R.3d 735; *Misconduct involving intoxication as ground for disciplinary action against attorney*, 17 A.L.R.3d 692; *Validity and application of regulation requiring suspension or disbarment of attorney because of mental or emotional illness*, 50 A.L.R.3d 1259; *Attorney's criticism of judicial acts as ground for disciplinary action*, 12 A.L.R.3d 1408; *Attorney's splitting fees with other attorneys or layman as ground for disciplinary proceeding*, 6 A.L.R.3d 1446.

**9.** Since the plaintiff has attached and incorporated the entire rule into his complaint, I will consider the rule as part of his factual allegations.

lowing the court to decide arbitrarily that suspension is a proper penalty. However, rule 260 states that "... the Supreme Court shall enter such order as it shall deem appropriate, which may include an order of summary suspension from the practice of law...."

### 3. EQUAL PROTECTION

■ The plaintiff argues that rule 260 violates the equal protection clause because it exempts attorneys age 65 and over from its requirements. Assuming that such an exemption could even give rise to an equal protection claim, the plaintiff, it appears, has not read rule 260 carefully. The rule merely allows those over age 75 to apply for an exemption "setting forth good faith reasons why he or she is unable to comply...." *See* rule 260.5. Because the class of lawyers under age 75 is not "suspect," I need only determine whether allowing those over 75 to apply for a C.L.E. exemption bears some rational relationship to legitimate state purpose. *See generally*, Tribe, *American Constitutional Law*, Ch. 16 (1978). There is no question that a state may exempt senior citizen attorneys from the C.L.E. requirements upon a showing of hardship.

### B. FIRST AMENDMENT

The plaintiff claims that rule 260 violates the first amendment right "not to be forced to hear speeches or assemblies." The notion is tempting, but I am unaware of any such right guaranteed by the First Amendment. Accordingly, the plaintiff's First Amendment claim is dismissed. *Cf. Lathrop v. Donohue*, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961).

### C. SIXTH AMENDMENT [10]

■ The plaintiff claims that rule 260 violates his Sixth Amendment rights by not providing for a jury trial and not permitting consideration of "mitigating factors."

However, no right to jury trial exists in proceedings where the maximum punishment does not exceed six months imprisonment. *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). Rule 260 does not authorize the imposition of prison sentences. Further, the plaintiff's claim that rule 260 does not provide for consideration of mitigating factors, while more likely a procedural due process rather than a sixth amendment claim, is without merit. Rule 260 provides attorneys the opportunity to show reasonable cause for non-compliance. If reasonable cause is found, the attorney is given the opportunity to correct the non-compliance. *See* rule 260.-6(9), (9)(a).

### D. EIGHTH AMENDMENT

■ The plaintiff claims that suspension from practice for violation of rule 260 constitutes "cruel and unusual punishment." However, this claim is without merit since the eighth amendment does not apply where loss of a license is the full extent of possible punishment. *See Fitzgerald v. Cawley*, 368 F.Supp. 677, 681 (S.D.N.Y. 1973).

### E. THIRTEENTH AMENDMENT

■ The plaintiff claims that the requirement that attorneys attend C.L.E. classes violates the thirteenth amendment prohibition against involuntary servitude. Even if attending C.L.E. classes could be considered "servitude," it is clearly not servitude that is compelled by law or force. No involuntary servitude exists where the claimant has an option not to serve. *See Flood v. Kuhn*, 443 F.2d 264, 268 (2d Cir. 1971); *United States v. Shackney*, 333 F.2d 475, 486–87 (2d Cir. 1964). In *Flood v. Kuhn, supra*, the Second Circuit rejected a thirteenth amendment challenge to baseball's reserve system whereby players are restricted to contract negotiations with the first team that "reserves" the player. The

---

10. While it is an open question whether the sixth amendment applies to attorney disciplinary proceedings, the Second Circuit has held that such proceedings are "quasi-criminal" in nature because they may result in loss of livelihood and harm to reputation. *Erdmann v. Stevens*, 458 F.2d 1205, 1208, 1209–10 (2d Cir. 1972).

court held that there was no thirteenth amendment violation because the players had the right not to play. Similarly, lawyers have the right not to attend C.L.E. classes, and not practice law so the plaintiff has failed to state a claim under the thirteenth amendment. Further, rule 260 provides for numerous means of satisfying its requirements in addition to attending classes.

## F. SEPARATION OF POWERS

██ The plaintiff claims that rule 260 violates the separation of powers principle embodied in the United States Constitution. The plaintiff argues that the rule is an "illegal usurpation of authority by the judicial branch of the government" from the legislative and executive branches in violation of the United States Constitution. However, it is elementary that the principle of separation of powers is not enforceable against the states as a matter of federal constitutional law. *Sweezy v. New Hampshire*, 354 U.S. 234, 255, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957); *Attwell v. Nichols*, 608 F.2d 228, 230 (5th Cir. 1979). Accordingly, this contention fails to state a claim.

## G. HARASSMENT

The plaintiff requests injunctive relief against James Holloway, a member of the Grievance Committee of the Colorado Supreme Court, from "harassment" in sending a letter to the plaintiff "demanding explanation and inferring wrongdoing" in connection with the plaintiff's continued use of his legal stationery despite his suspension. First, there is no tort of harassment in Colorado law. The plaintiff may have intended either to assert an implied cause of action based on the criminal prohibition against harassment, C.R.S. § 18–9–111 (1973), or a cause of action based on the "intrusion on seclusion" variety of the common law right of privacy, *see Restatement of the Law of Torts* 2d § 652(B), sometimes labelled harassment. *See Galella v. Onas-*

*sis,* 487 F.2d 986, 994–95 and nn. 11 and 12 (2d Cir. 1973). However, in either event, the plaintiff has failed to allege facts sufficient to state a claim.

██ Assuming that the harassment statute even authorizes a private right of action, *cf. Rawson v. Sears Roebuck*, 530 F.Supp. 776 (D.Colo.1982), the plaintiff has not pleaded facts sufficient to claim a violation of the statute. The only possible prong of the harassment statute that the plaintiff could have been relying on is C.R.S. § 18–9–111(1)(d), which prohibits a person "with intent to harass, annoy or alarm another person" from repeatedly committing acts that alarm or seriously annoy another person and that serve no legitimate purpose. The plaintiff has not alleged that the defendant—James Holloway has committed *repeated* acts, but merely that he sent one letter, which the plaintiff considered annoying. The plaintiff has not claimed that the letter serves no legitimate purpose.

██ Second, assuming that it would be permissible for a federal court to infer the existence of a previously unrecognized common law right of privacy as inhering in state law,[11] *cf. Galella v. Onassis, supra*, at 995 n.12, the plaintiff has not alleged facts sufficient to support such a claim. Restatement of the Law of Torts 2d § 552(B) provides a cause of action against one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, if the intrusion would be highly offensive to a reasonable person. The plaintiff has not alleged that the letter, regarding his continued public representation of attorney status, is an intrusion upon his solitude, seclusion or private affairs or concerns. Nor has the plaintiff alleged that this one letter could be highly offensive to a reasonable person. *Cf. Rawson v. Sears Roebuck*, supra, 530 F.Supp. at 778–781.

Finally, this is a pendent claim. Since I have dismissed the federal claims, there is nothing to which this state claim may append.

11. Such an approach raises a question of the proper interpretation of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.

1188 (1938). *See* 1A Pt.2 *Moore's Federal Practice*, ¶ 0.309[2] and is beyond the necessary scope of this opinion.

## IV. PENDING MOTION

On November 3, 1981 the plaintiff filed a pleading entitled "Affidavit and Motion to Disqualify/Change Judge." The motion was denied by order dated November 23, 1981. A copy of that order is attached hereto as Appendix. Thereafter, on November 30, 1981 the plaintiff filed a motion entitled "Motion to Add Additional Parties" in which he seeks to add "the Honorable Judge John J. Kane" (sic) and the National Center for Continuing Legal Education, Inc., as additional parties defendant. The gist of the motion is that I have taught courses for the National Center for Continuing Legal Education, Inc., and that somehow or other the National Center for Continuing Legal Education, Inc., is a purveyor of C.L.E. courses for and on behalf of defendants in this action. The plaintiff then alleges that the "judge herein is involved in a conspiratorial violation of Plaintiff's Civil Rights." The precise conspiracy is not alleged though the plaintiff states that "The specific violations have been set forth in Pleadings in this action. Said conspiracy involves the Defendants heretofore named and each and every purveyor of compulsory legal education class materials, of which said Judge, by his own admission, is such a purveyor, as well as his principal, National Center for Continuing Legal Education, Inc." A careful review of the pleadings fails to disclose any facts which would support the plaintiffs conclusory allegations. Rule 260, C.R.Civ.P. does not require any person or agency to provide continuing legal education materials or courses nor is plaintiff or anyone else required to use courses or continuing legal education materials in order to satisfy the requirements of the rule. The motion has the outward appearance of a motion to join additional parties, but lacks its genuine qualities. Given its juxtaposition to the order denying plaintiff's motion to disqualify the trial judge and all other judges involved in continuing legal education in this or any other jurisdiction, the motion to add additional parties must be regarded as a peevish attempt to circumvent the rules and statutes applicable to recusal and disqualification.

The motion is denied because it is moot. If not, it would be denied because it is jejune. Further, plaintiff attempts this joinder pursuant to Rule 21 which requires the court to determine whether such joinder is just. It is patently unjust to permit a joinder which would defeat the jurisdiction of the court. *See* Rule 19(b) F.R.Civ.P. Subject to the sanctions of Rule 11, F.R. Civ.P. and 28 U.S.C. § 1927, *as amended*, the plaintiff may file an independent action.

Accordingly, it is hereby

ORDERED that this complaint and civil action are dismissed. Each party to bear his, her or its own costs.

## APPENDIX

### ORDER

KANE, District Judge.

The plaintiff in this action appears *pro se.* He has filed a pleading which he denominates "Affidavit and Motion to Disqualify/Change Judge." He cites no authority. I assume that the motion and affidavit is made in an effort to comply with 28 U.S.C. § 144, but, if so, the effort is inadequate. Such an affidavit must state with particularity the facts and reasons for the belief that a judge has personal bias or prejudice either against the affiant or in favor of any adverse party. The affidavit merely attests to the authenticity of an exhibit attached to the pleading. It states:

"1. Affiant is the plaintiff herein.

2. Affiant obtained Plaintiff's Exhibit D, brochure of 'National Center for Continuing Legal Education, Inc.' on or about October 19, 1981. The attached photocopy is a true and correct copy of the printed original received by Plaintiff.

*FURTHER affiant saith not.*" (Emphasis added.)

The referenced exhibit shows that I lectured to a group of lawyers on October 24, 1981 on the subject of attorney fees. For the sake of candor, this record should in-

clude matters not mentioned in the affidavit relating to my participation in continuing legal education. Indeed I readily admit to having lectured, written, taught and conducted seminars in legal subjects both before being appointed to the bench and since. At the present time I am conducting a seminar in legal history as an adjunct professor of the University of Denver College of Law and I am scheduled within the next three months to teach additional courses. Thus, this record should be clear that this judge is active in speaking, writing, lecturing, teaching and participating in educational activities concerning the law, the legal system, and the administration of justice. I make particular mention of this activity because it is required of me by Cannon 4 of the Code of Judicial Conduct, the Commentary of which states as follows:

> As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice. To the extent that his time permits, he is encouraged to do so, either independently or through a bar association, judicial conference, or other organization dedicated to the improvement of the law.

Not only does the plaintiff wish me to recuse myself, but his motion asks that only a judge who is " . . . uninvolved in continuing legal education faculties or programs, or mutually of this jurisdiction associated with Defendants herein on 'faculties' or other prejudicial activities" be assigned and if none is to be found then to have the United States Supreme Court appoint a judge, "not involved in continuing legal education activities in this or any other jurisdiction, to replace . . ." me. Further, plaintiff " . . . asserts Judges of the United States Court of Appeals Tenth Circuit, are similarly involved with continuing legal education activities as denoted aforesaid."

I glean from the foregoing that none of my colleagues on this bench nor my superiors on the Court of Appeals is desired by the plaintiff to sit on this case. In order to satisfy the prayer of the plaintiff it would be apparently necessary for the United States Supreme Court to appoint a judge who can be recognized as a violator of Cannon 4 of the Code of Judicial Conduct. No procedure exists to obtain this result and I am without authority to tell the United States Supreme Court to do anything.

There is some inference to be obtained from the motion (but not from the affidavit) that recusal should occur because the defendants or some of them associate in some way with the judges of this court and that we " . . . are not only interested pecuniarily or otherwise in the outcome of this lawsuit, but are prejudiced by reason of such close employment or 'faculty' associations." While it cannot be gainsaid that some of the defendants (they include the entire Colorado Supreme Court) are known to the judges of this court, such is no basis for asserting personal bias or prejudice either against the plaintiff or in favor of any adverse party. It is clear that a judge should recuse himself if adequate grounds therefor are presented, but it is equally clear that a judge should not recuse himself easily or for convenience or for frivolous reasons. A judge is under an affirmative duty to try cases assigned to him unless an affidavit which fulfills the requirements of 28 U.S.C. § 144 is filed or unless the judge makes findings on his own motion as directed by 28 U.S.C. § 455. I find that none of those reasons appears. The questions presented by plaintiff's complaint cannot be interpreted as a general critique of continuing professional education. Whether lawyers and judges voluntarily participate in such activities as an affirmative demonstration of a perceived ethical obligation is irrelevant. The questions presented are, first, whether this court has jurisdiction over the parties and the subject matter and, second, whether in its supervision of the practice of law in the State of Colorado, the Colorado Supreme Court requirement that members of its bar must participate in continuing legal education activities violates the recognized civil rights of the plaintiff.

This court and this judge have no connection with the rules of the defendants or with the enforcement of those rules and are not therefore legally interested in such a way as to justify disqualification. It is

ORDERED that the pleading denominated "Affidavit and Motion to Disqualify/Change Judge" is denied.

DATED at Denver, Colorado this 23rd day of November, 1981.