**John Charles LEVANTI, Plaintiff,**

v.

**James B. TIPPEN, et al., Defendants.**

**Civ. No. 83–1654–T.**

United States District Court,
S.D. California.

May 7, 1984.

John Charles Levanti, pro se.

Herbert M. Rosenthal, Marie M. Moffat, San Francisco, Cal., Robert M. Sweet, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION

TURRENTINE, District Judge.

Plaintiff, who represents himself, is an attorney admitted to the practice of law in Connecticut and Rhode Island. Plaintiff applied and was certified by the California Committee of Bar Examiners ("the Committee") to be an attorney applicant for the July, 1982 bar examination. Plaintiff received the "Attorneys' Exam Policy Statement" from the Committee. Plaintiff was thereby informed of his option to take either the General Bar Examination ("GBE"), consisting of the Multistate Bar Examination ("MBE") and nine essay questions, or the Attorneys' Examination, which consists solely of the essay portion of the GBE. Plaintiff was further notified that:

> For the past several examinations, the passing rate has been higher on the MBE than on the Essay Examination. Statistically, then, the attorney applicant should take the GBE (both Essay and MBE) as there is a better than even chance the MBE score will raise the grade assigned to his/her performance.

The Policy Statement did not explain the Phase I grading process discussed below.

Plaintiff chose to take the July, 1982 Attorneys' Exam and did so. He received a grade of 69.4%. A score of 70% was the minimum passing grade. Plaintiff was not certified by the Committee for admission to the legal profession in California on the ground that he failed the bar exam. An explanation of the phased grading system used to assess the July, 1982 bar exam was routinely enclosed with the letter sent to the plaintiff informing him that he had failed the exam.

Phase I of that process involves the grading of only the MBE and three of the nine essays. If an applicant scores high enough on this abbreviated review, he passes without having his other essays read. A handful of borderline applicants pass in this manner when they would have failed if their exams were fully examined. Since he did not take the MBE portion of the exam, Levanti's exam was ineligible for Phase I grading.

Plaintiff wrote to the Committee and requested a refund of his exam fee and the "formation [sic] of a statistical equation" which would place attorney examinees "in parity" with those who took the GBE and were eligible for Phase I grading. Apparently, plaintiff would have the Committee toss a calculated uncertainty factor into the grading of attorney exams or conduct a lottery so that he would have some sort of "wild card" chance of passing an exam he has failed.

Plaintiff filed a petition with the Committee in which he presented the gist of the constitutional arguments raised in Counts I, II and III of his complaint. That petition was considered and denied. Mr. Levanti thereupon filed a petition for a writ of review in the California Supreme Court pursuant to Cal.Bus. & Prof.Code § 6066. He raised his constitutional arguments again and the issues were fully briefed by plaintiff and the State Bar of California. On May 25, 1983, the California Supreme Court denied Levanti's petition.

Plaintiff then sought relief in this Court by filing an action against the State Bar and the Committee of Bar Examiners, seeking injunctive relief as well as almost $2,000,000 in compensatory and punitive damages. The Court dismissed that action for lack of subject matter jurisdiction under the Eleventh Amendment to the Federal Constitution on November 2, 1983. Plaintiff was given leave to amend.

Levanti filed an amended complaint, naming individual members of the State Bar and the Committee in their official capacities. Defendants moved to dismiss on a variety of jurisdictional and substantive grounds. Since arguments advanced by the parties in respect to the defendants' motion to dismiss made use of material outside the pleadings—specifically facts in the affidavit of Jane Peterson Smith, the Director of Examinations for the Committee—the Rule 12(b)(6) motion was converted by the Court into a Rule 56(c) motion. *See* 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1366 (1969). The parties were given an additional five weeks in which to prepare arguments pertaining to the summary judgment motion, with particular attention to the substantive constitutional challenges raised in Counts I, II and III of the amended complaint.

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is clearly entitled to prevail as a matter of law. The evidence and pleadings in such a case are to be construed in favor of the party opposing the motion. *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 677 (9th Cir.1984). Most of the issues before this Court are purely "legal" ones such as subject matter jurisdiction, which are properly resolved at this point in the proceedings. Plaintiff's constitutional challenges to the Phase I grading process used by the defendants are also ripe for review, as there are no material factual disputes over the mechanics of the process or the information that plaintiff was provided about that process or the information that plaintiff was provided about that process prior to sitting for the exam. There are merely disagreements as to the ramifications of certain facts. For example, the

parties agree that Levanti received a score of 69.4% on his exam. Defendants characterize this as a failing grade, since the minimum passing grade is 70%. Levanti, for reasons of his own, prefers to characterize his grade as "neither passing nor failing," despite the fact that it was the basis for denying his application for admission to the California Bar. No trial is required to resolve disputes of this sort.

Plaintiff's claim that further discovery is needed before a Rule 56 motion may be considered is without merit. All of the relevant information which Levanti seeks in his interrogatories has already been provided in the sworn affidavits of Jane Peterson Smith, the Director of Examinations. Plaintiff objects that these declarations were not made under oath, an assertion belied by the recitations of the affidavits themselves. In any event, "neither a desire to cross-examine an affiant nor an unspecified hope of undermining ... her credibility suffices to avert summary judgment." *National Union Fire Insurance Co. v. Argonaut Insurance Co.*, 701 F.2d 95, 97 (9th Cir.1983).

The clash over the constitutional challenges to Phase I grading revolves not about the facts of the grading process but about the constitutionality of its impact on non-resident attorney applicants to the bar. Sufficient uncontested facts are before the Court to justify consideration of a motion for summary judgment.

## I. SUBJECT MATTER JURISDICTION.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction. Resolution of this issue requires a careful examination of just what Levanti seeks to achieve in this action. The plaintiff attacks both the decision which denied him admission to the bar, and the general rules of Phase I grading. He has repeatedly asserted that his own admissions decision is not in issue, yet his submissions to this Court belie that statement. First, Levanti seeks some sort of "statistical equation" which would alter the results of the July, 1982 bar examination. *See, e.g.,*

Count I, ¶ 12. Second, he seeks a new hearing before the Committee of Bar Examiners on his complaints. *See, e.g.,* Count V, ¶ 12. Seeking retroactive implementation of procedures leading to admission under the same facts previously presented to the California Supreme Court, and requesting a second hearing before the Committee on identical issues and facts are unmistakeably efforts to have this Court review the decision of the state supreme court to deny Levanti's application for admission.

The defendants would have this Court believe that admission to the California Bar is all the plaintiff is after. Levanti, of course, characterizes his complaint differently; not as an attack on his own admission decision, but as a constitutional assault on the State Bar's grading scheme, brought on behalf of himself and all other similarly situated non-resident attorney applicants. Plaintiff proceeds *pro se* in this action, and since he is not admitted to practice law in this state he cannot possibly be representing anyone else, despite his statements to this Court of his intentions to share his damage award with others.

Attempts to characterize this action as *either* a frustrated applicant's appeal for review *or* a constitutional attack on the state's general rules governing bar admissions miss the point. Plaintiff and defendants are each half-right in this regard, because the instant lawsuit is a hybrid. We are fortunate in having fresh and unambiguous guidance in this area from the Supreme Court.

United States District Courts ... have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case. They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court.

*District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 1317, 75 L.Ed.2d 206 (1983); *see also Tofano v. Supreme Court of Nevada,* 718 F.2d 313, 314 (9th Cir.1983).

In *Feldman,* frustrated bar applicants sought declaratory and injunctive relief which would have compelled their admission to the bar or allowed them to sit for the exam. They attacked *both* the general rule requiring graduation from an ABA-approved law school, *and* the application of that rule to themselves. *Id.* 103 S.Ct. at 1308 n. 3, 1309–10. The relief sought was thus essentially individual—the plaintiffs asked that the rules and decisions in their cases be struck down. This alone, however, is not dispositive of the issue of subject matter jurisdiction.

The Supreme Court refused to read the complaints in *Feldman* as either black or white, finding both an effort to obtain review and a more general challenge to the constitutionality of the rules involved. *Id.* at 1317 n. 18. Thus, a District Court's duty is to separate the wheat from the jurisdictional chaff, and exert jurisdiction over the former while discarding the latter.

■ In the present case, Levanti asserts that Phase I grading discriminates unconstitutionally against non-residents and seeks some sort of mathematical formula which would place him and his fellow non-resident attorney applicants on an equal footing with general bar applicants. This Court has jurisdiction over this constitutional challenge to the grading scheme employed by the California Committee of Bar Examiners.

However, this Court has no jurisdiction over those aspects of the complaint which would have the Court review the California Supreme Court's adjudication of Levanti's application. In Counts IV and V plaintiff seeks, *inter alia,* an order compelling the California Supreme Court to order its Committee of Bar Examiners to conduct another hearing on his allegations of defects in the Phase I grading process. Levanti contends that the Committee and the California Supreme Court gave short shrift to his

complaints and thereby denied him due process of law. Contrary to Levanti's assertion at oral argument, the California Supreme Court does have jurisdiction to hear and determine federal constitutional issues. Plaintiff raised his due process argument and others before the California Supreme Court and that tribunal denied his petition for a writ of review of his bar application. That denial constitutes a judgment on the merits. *Konigsberg v. State Bar of California,* 353 U.S. 252, 254, 77 S.Ct. 722, 723, 1 L.Ed.2d 810 (1957). "In considering actions of the Committee of Bar Examiners the California Supreme Court exercises original jurisdiction and is not restricted to the limited review made by an appellate court." *Ibid.; see also Tofano, supra,* 718 F.2d at 314; *Brown v. Board of Bar Examiners,* 623 F.2d 605, 610 (9th Cir.1980). Review of that admissions decision of the highest court in California may only be had in the Supreme Court of the United States pursuant to 28 U.S.C. § 1257.

The plaintiffs in *Feldman,* like the plaintiff here, raised due process issues about the way the jurisdiction's highest tribunal dealt with their applications to the bar. 103 S.Ct. at 1306, 1308 n. 3, 1309. Despite their constitutional coloring, the due process arguments in Count V of Levanti's amended complaint are "inextricably intertwined" with the California Supreme Court's decision to deny his petition. *Feldman, supra,* 103 S.Ct. at 1317. Thus, to assert jurisdiction over Count V of the amended complaint would put this Court in "the unsupportable position of reviewing an order of a jurisdiction's highest court." *Id.* at 1308 (citation omitted); *id.* at 1317.

■ Therefore, the Court finds that it is without subject matter jurisdiction over Count V of the amended complaint, but that it does have such jurisdiction over the general constitutional challenges in Counts I, II and III. Counts IV and VI are wholly redundant. Count IV parrots the allegations of Count I, but rather than asserting violations of the various textual provisions of the Constitution cited in that count, Count IV seeks recovery based on a "viola-

tion of 42 U.S.C. § 1983." That statute, of course, merely provides a private cause of action, and is not itself an independent source of substantive constitutional rights. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979). Count VI of the amended complaint is similarly redundant with respect to Count V, and suffers the same jurisdictional infirmity.

## II. IMMUNITY.

■ The amended complaint seeks, *inter alia,* almost $2,000,000 in compensatory and punitive damages from 15 present and former members of the Committee of Bar Examiners for admissions and policy decisions made in their official capacities. Defendants argue that no damage remedies are appropriate because they were acting in a quasi-judicial capacity and are therefore immune from suit.

Admission to the practice of law in California is an exercise of the inherent judicial power of the California Supreme Court. Cal.Bus. & Prof.Code §§ 6064–66. The State Bar of California is a constitutional agency established as a public corporation in the judicial branch of government. Cal. Const. Art. VI, § 9; Cal.Bus. & Prof.Code § 6001. As such, the State Bar is an arm of the California Supreme Court which assists that court in the judicial function of bar admissions. *See Emslie v. State Bar,* 11 Cal.3d 210, 224, 113 Cal.Rptr. 175, 520 P.2d 991 (1974); *Brotsky v. State Bar,* 57 Cal.2d 287, 300–01, 19 Cal.Rptr. 153, 368 P.2d 697 (1962). Likewise, the Committee of Bar Examiners is established pursuant to state law, Cal.Bus. & Prof.Code §§ 6046, 6064, to operate as an administrative arm of the California Supreme Court. *Chaney v. State Bar,* 386 F.2d 962, 966 (9th Cir. 1967); 57 Ops.Cal. Att'y Gen. 583, 584 (1974).

The Committee is specifically authorized to determine the form and content of the bar exam, including the passing score and the standards and methods of grading. Cal.Bus. & Prof.Code §§ 6046, 6047, 6060(f), 6060(g), 6062(d). The Committee

certifies applicants for admission to the California Supreme Court, but such a recommendation is purely advisory, *Chaney v. State Bar, supra,* 386 F.2d at 966, and like all other decisions of the Committee is subject to review by the California Supreme Court. Cal.Bus. & Prof.Code § 6066.

Since they were functioning as an arm of the California Supreme Court in acting on Levanti's application and in grading his exam, the defendants are protected by the same ·cloak of absolute judicial immunity worn by that tribunal. *See Simons v. Bellinger,* 643 F.2d 774, 782–84 (D.C.Cir.1980) and cases cited therein at 779; *Clark v. State of Washington,* 366 F.2d 678, 681 (9th Cir.1966).

■ Defendants further argue that the same quasi-judicial immunity protects them from liability for the promulgation of the phased grading process. In this regard the defendants misapprehend their authorities. The cases they rely upon for this proposition involve challenges to the particular results of bar disciplinary proceedings. *See, e.g., Simons v. Bellinger, supra,* 643 F.2d at 781; *Clark v. State of Washington, supra,* 366 F.2d at 681; *Verner v. State of Colorado,* 533 F.Supp. 1109, 1115 (D.Colo.1982). Although activity relating to the admission or disbarment of a particular individual may well be "judicial" in nature, the promulgation of a general rule relating to the scoring of thousands of bar exams can hardly be so characterized.

The complaints about the handling of plaintiff's individual bar application contained in Count V are not before this Court. The only claims Levanti has pending are the constitutional challenges raised in Counts I–III, and those relate to the grading process established by the Committee of Bar Examiners. When promulgating general rules which govern conduct or admission to the state bar, state supreme courts, *and* their administrative arms, act in a legislative rather than a judicial capacity. *See, e.g., Feldman, supra,* 103 S.Ct. at 1316; *Supreme Court of Virginia v. Consumers Union,* 446 U.S.·719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980); *In re*

*Summers*, 325 U.S. 561, 566, 65 S.Ct. 1307, 1310, 89 L.Ed. 1795 (1945). Therefore, a cloak of judicial or quasi-judicial immunity provides no comfort for defendants against the attacks raised in Counts I—III of the amended complaint.

■ However, those who legislate enjoy an immunity of their own. The Supreme Court has held that state legislators are absolutely immune from suit under § 1983 for actions in the sphere of legitimate legislative activity. *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). That doctrine is equally applicable to federal, state and regional legislators, *Lake Country Estates v. Tahoe Planning Agency*, 440 U.S. 391, 405, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979), and to state supreme courts engaged in enacting rules for regulating the conduct of the state bar. *Supreme Court of Virginia v. Consumers Union, supra,* 446 U.S. at 731–34, 100 S.Ct. at 1974–75. This Court can discern no reason for not recognizing an identical immunity for the official act of establishing rules governing bar admissions as well as discipline. Therefore, the defendants are immune from suits for damages based on the claims set forth in the amended complaint. Only plaintiff's action for injunctive or other prospective relief remains before this Court. Since the Court has ruled in favor of defendants' immunity from damages liability on the basis of quasi-judicial and legislative immunity, there is no need to reach their contention that the Eleventh Amendment also protects them.

### III. THE CONSTITUTIONAL CHALLENGES.

Levanti challenges the multi-phased grading process used by the Committee of Bar Examiners as a violation of the Equal Protection Clause of the Fourteenth Amendment, the Privileges and Immunities Clause of Article IV, § 2, and the right to travel. The common element of all of these claims is an allegation of disparate treatment of non-resident bar applicants such as the plaintiff. Therefore, a detailed explanation of the mechanics of the July, 1982 California Bar Exam is in order.

The General Bar Examination, in addition to the Professional Responsibility Examination required of all applicants, consists of the multiple-choice Multistate Bar Examination and nine questions requiring longer answers in paragraph form. Although the answers to such questions rarely resemble what Hazlitt or Carlyle would call an essay, these nine will be referred to as essay questions.

Either the MBE or the essay part may be passed separately by a score of 70%, so long as both parts are passed within a 21-month period. If the two parts are taken at the same sitting, points in excess of 70% on one part may be used to raise the grade on the other part to a passing level.

If an applicant is admitted to legal practice elsewhere and has actively practiced law for four of the preceding six years, he has two options. He may take either the GBE or the Attorneys' Exam, which consists only of the same nine essay questions given on the GBE. The passing score required on those essays is again 70%.

The Committee uses a four-phased grading process to cull out the clearly passing or failing exams in order to allow concentration on the borderline cases. In Phase I, the graders score the MBE and pick out three essays (one 90-minute and two 60-minute questions) at random. If the score obtained on these three essays, when added to the MBE score, amounts to 74% or more, the applicant is passed without the remaining six essays being read, so long as something is written down in answer to them.

The Committee does not grade the remaining six essays because studies conducted in recent years indicate that 99.5% of those who pass Phase I would pass even if their entire exams were graded. Thus, approximately five applicants out of every thousand pass at Phase I when they would otherwise have failed.

In exchange for this loss in accuracy and the semi-free ride it provides to a few borderline applicants, the Committee saves

about two-thirds of the time it would otherwise take to grade the exams passed in Phase I, and that time can be devoted to a far more careful assessment of those exams which hover on the edge of passing or failing. The beneficiaries of Phase I therefore include those applicants, such as Levanti, whose exams can now be read and reread and given a far more thorough consideration than one would expect from a Committee which confronts seven or eight thousand applicants each July.

Since he elected to take the Attorneys' Exam which comprised only the essays, plaintiff's exam was not eligible for Phase I consideration. His exam passed to Phase II, where the remaining six essays were graded. Plaintiff fell into the "Still Questionable" group after Phase II, so he passed to Phase III where a second team of independent readers rescored his essay answers. His two sets of essay scores were then averaged, but Levanti again fell not into a clear "Pass" or "Fail" group, but into the "Reappraisal" category. A member of the Board of Reappraisers then reevaluated all of the plaintiff's essays to see whether enough points could be found to pass him. Levanti's final exam score after all four phases was 69.4%, a failing grade.

The basic premise of all of plaintiff's constitutional challenges is that Phase I grading favors California residents over applicants from other states. This simply is not true. Phase I grading is applied to every person who chooses to take the GBE, regardless of where he or she hails from. There is no requirement that an applicant be a California resident or citizen. (The terms are in effect fungible. *See* Cal.Govt. Code § 241.) Although most of those who take the GBE may well be California residents, hundreds of new law graduates come to this state every year to seek their legal fortunes in California courts. Plaintiff himself was free to take the GBE rather than the Attorneys' Exam. The negligible statistical benefits of Phase I grading thus fall on both residents and non-residents so long as they take the GBE.

Similarly, Levanti and other non-resident attorney applicants are not the only people excluded from consideration during Phase I of the grading process. California residents admitted to practice in other jurisdictions who choose to take the Attorneys' Exam cannot be graded under Phase I since they do not take the MBE. In July of 1982, when plaintiff was an applicant, both resident and non-resident applicants were allowed to take the MBE and essay portions of the GBE at separate sittings, so long as both sections were passed individually within a 21-month period. Since the GBE was thus bifurcated, Phase I grading was unavailable to these applicants, regardless of which state they called home.

For the July, 1982 exam in question there were 7,764 applicants. Of the 393 of those who took only the essay portion of the exam, only 141—less than half—were attorney applicants such as plaintiff. The other 252 people who took only the essays were general applicants. Thus the bulk of what Levanti characterizes as the "disguised penalty" of Phase I grading seems to fall on California's native sons and daughters.

Thus, like the rain, the "blessings" of Phase I fall on Californian and non-Californian alike. Moreover, plaintiff could have chosen to take the full GBE, thereby availing himself of the fractionally higher ($^5/_{1000}$ or 0.5%) probability of passing the exam. Attorney applicants are free to take either the GBE or the Attorneys' Exam. Indeed, information sent to attorney applicants by the Committee points out this choice, and notes that since more people pass the MBE than the essay section, "an attorney applicant should take the GBE as there is a better than even chance that the MBE score will raise the grade assigned to his/her performance."

Plaintiff claims that he was "induced" to suffer the "disguised penalty" of being excluded from Phase I grading because he was not informed of this aspect of the grading process before he made his choice. The phased grading process was only explained in a letter accompanying the notice

from the Committee that he had flunked the exam. However, *no one else* was notified before the exam either. Plaintiff was therefore at no greater disadvantage because of his ignorance of Phase I than were the California attorney applicants or the California general applicants who chose to take the exam in two separate sittings. We can now examine plaintiff's specific constitutional arguments in light of this understanding of the Committee's grading scheme.

Plaintiff's constitutional challenges to the Phase I grading process are little more than conclusory accusations that defendants "conspired together" to impose on plaintiff and other attorney applicants a "disguised penalty," "with the intent to deny [them] an equal opportunity for success on the California State Bar Exam." Count I, ¶ 11. Levanti has declined to flesh out these arguments despite three opportunities over a six month period to do so in opposition to defendants' motions, and despite a specific suggestion to do so in this Court's order setting a hearing for summary judgment.

■ Plaintiff asserts that defendants' use of Phase I grading denied him the equal protection of the laws. As explained at length above, there is absolutely no discriminatory treatment of non-residents or attorney applicants as a class. Even if there were disparate impact on those from out-of-state, non-residence and out-of-state citizenship have not been deemed suspect classifications for equal protection purposes. L.Tribe, *American Constitutional Law* 411 (1978); *See also Zobel v. Williams*, 457 U.S. 55, 60, 102 S.Ct. 2309, 2312, 72 L.Ed.2d 672 (1982). Federal court review of state procedures for bar admission and testing is guided by the rational basis standard. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–56, 1 L.Ed.2d 796 (1957); *Tofano v. Supreme Court of Nevada*, 718 F.2d 313, 315 (9th Cir.1983).

■ The rational basis for Phase I is obvious: by grading just the MBE and three of the nine essays, the Committee saves an enormous amount of time while preserving 99.5% accuracy. The time and effort thus conserved is devoted to giving borderline exams—such as plaintiff's—exhaustive consideration, thereby further promoting the accuracy of the examination process. This constitutes a rational trade-off if ever there were one.

Plaintiff also asserts that Phase I violates the Privileges and Immunities Clause of Article IV, § 2. Once again, the Court finds no difference in the treatment accorded to non-residents. Neither California citizenship nor residency—nor even United States citizenship, *Raffaelli v. Committee of Bar Examiners*, 7 Cal.3d 288, 301–304, 101 Cal.Rptr. 896, 496 P.2d 1264 (1972)—is required of an applicant to the California bar. Non-residents and attorney applicants are free to take the full GBE and avail themselves of the meagre incremental statistical advantage of Phase I. The Privileges and Immunities Clause cannot be offended by a grading process which does not burden those from other states.

Finally, plaintiff argues that defendants have infringed his constitutionally protected right to travel. The lack of disparate treatment of non-residents or recent arrivals under Phase I eliminates the possibility of a barrier to interstate travel. There is no need to delve into the right to travel cases. Whether the right is merely a form of equal protection analysis, *Zobel v. Williams, supra,* 457 U.S. at 60 n. 6, 102 S.Ct. at 2312 n. 6, or resides in the Privilege and Immunities Clause of Article IV, *id.* at 81, 102 S.Ct. at 2323–24 (O'Connor, J., concurring), or " 'occupies a position fundamental to the concept of our Federal Union,' " *id.* at 67, 102 S.Ct. at 2316 (Brennan, J., concurring) (quoting *Shapiro v. Thompson,* 394 U.S. 618, 630, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969)), and therefore need not be assigned a specific textual source, every case invoking the right to travel has required the plaintiff to establish disparate treatment of outsiders which inhibits free passage across state borders. None has been or could be shown with respect to the Phase I grading process.

Plaintiff's constitutional challenges are therefore without merit and summary judgment will enter in favor of the defendants. The plaintiff is not left without any remedy, as he remains free to follow the Court's initial advice and study harder for the next bar exam.

For the reasons set forth above, it is ORDERED that:

(1) Counts V and VI are DISMISSED for lack of subject matter jurisdiction;

(2) The damage claims in Counts I–IV are DISMISSED because defendants are immune from such liability;

(3) Count IV is DISMISSED for failure to state a claim upon which relief may be granted;

(4) SUMMARY JUDGMENT will enter in favor of the DEFENDANTS on Counts I, II and III.