Filed 12/11/23  Flinders v. State Bar of California CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MATTHEW FLINDERS, | H050562 |
| | (Santa Clara County |
| Plaintiff and Appellant, | Super. Ct. No. 22CV397095) |
| v. | |
| STATE BAR OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

Appellant Matthew Flinders is a patent attorney licensed to practice law in Massachusetts.  He moved to California and twice failed to pass the California Attorneys' Bar Examination, an exam available only to those who are licensed to practice law in other jurisdictions.

Flinders sued the Supreme Court of California (Supreme Court) and justices serving on it (hereafter, the "SCOCA action"), claiming the examinations wrongfully discriminated against him on the basis of age.  He separately filed the lawsuit underlying this appeal (hereafter, the "State Bar action"), making similar claims against the State Bar of California (State Bar), the California Department of Consumer Affairs (Department), specific State Bar and Department employees, and State Bar executive board and

committee members.[1]  Flinders also brought related claims in proceedings filed with the federal Equal Employment Opportunity Commission (EEOC) and in a suit later filed in federal district court (the "federal action").

This court previously affirmed the trial court's judgment of dismissal in the SCOCA action.  (*Flinders v. Supreme Court* (Mar. 17, 2023, H050203) [nonpub. opn.].)[2]  In the State Bar action at issue in this appeal, the State Bar and Department separately demurred to the complaint, and the trial court sustained the demurrers without leave to amend.  Flinders appeals from the judgment of dismissal.  After the close of briefing in this appeal, Flinders filed a motion to stay the appeal pending resolution of the federal action.

For the reasons explained herein, we deny Flinders's motion to stay this appeal and conclude the trial court properly sustained the demurrers.  Accordingly, we affirm the judgment.

## I.  FACTS AND PROCEDURAL BACKGROUND

*A. Facts[3]*

Flinders's complaint alleges that he is over the age of 50 and was licensed to practice law in Massachusetts and before the United States Patent and Trademark Office.

___

[1] We will generally refer to the State Bar entity and individual defendants collectively as the State Bar.  We will refer to the California Department of Consumer Affairs and named employee defendant as the Department.  Collectively, we will refer to the State Bar defendants and Department defendants as "defendants."

[2] The California Rules of Court authorize reference to unpublished California opinions only in a narrow set of circumstances not applicable here.  (See Cal. Rules of Court, rule 8.1115(b)(1).)  We may cite the decision to explain the factual background of the case but not as legal authority.  (*Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10.)  On its own motion, this court takes judicial notice of the record in the related prior appeal.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[3] The underlying factual background is the same as set forth in this court's opinion in the SCOCA action, which we recite largely verbatim here.  We include in this recitation any new facts alleged in the complaint as relevant to the State Bar and Department defendants.

He moved to California in 2018 and took a job that required him to become a member of the State Bar. He alleges that the State Bar has stated that the California Bar Examination tests " 'minimum competence' " expected in an " 'entry level position.' " (See Bus. & Prof. Code, § 6046.8.)

In July 2019, Flinders took the California Attorneys' Bar Examination, which is available only to those who are licensed to practice law in other jurisdictions. (See Bus. & Prof. Code, § 6062, subd. (a)(3).) He did not pass. In February 2020, he again took the examination and did not pass. Flinders paid a substantial fee to the State Bar to take these examinations, and he also spent many hours on and incurred costs for bar preparation and tutoring courses. Flinders learned of his second failure to earn a passing score on May 8, 2020. He alleges that the "general public received notice" of each failure to pass. Because he had not become a member of the State Bar, his employer terminated his employment.

Soon after he learned of his second failure to receive a passing score, Flinders requested records of passage rates from the State Bar, and he received those records on July 7, 2020. Flinders alleges that passage rates for the California State Bar Examination are "closely correlated with examinee age," and younger examinees pass the examination at much higher rates than older examinees. He alleges that defendants knowingly and intentionally "caused" the examination "to be unlawfully discriminatory" against older examinees. He also alleges that defendants failed to disclose "the extreme and unlawful discriminatory impact" of the examination on older examinees. Flinders alleges that the passage rates reflect that the State Bar did not apply the "MBE Scaling process" that it describes on its Web site.[4] He maintains that the examinations he took "were scored

---

[4] The complaint alleges that defendants falsely represented that they apply a scaling process based on scores achieved in the corresponding national "MBE portion of the full State Bar Licensing Examination" (referring to the "multi-state multiple-choice examination" administered by the National Conference of Bar Examiners) to correlate the

3

utilizing an arbitrary and unreasonable measure of manual dexterity that overwhelmingly favored younger examinees over older examinees in protected age categories, and that had no reasonable or legitimate relationship to an assessment of 'minimum competence to practice law as an entry level attorney.' "

Flinders also alleges that defendants "have routinely engaged" analysts to collect, analyze, and report data pertaining to the demographics of State Bar applicants, "including their ages and the discriminatory disparate demographic impact upon those applicants in the administration of past State Bar licensing examinations." He alleges that individual defendants Tracy Montez (Montez), the Department's Chief of the Division of Programs and Policy Review, and Ron Pi (Pi), a State Bar principal data analyst, "participated in a State Bar-sponsored 'standard setting study' " that "wrongfully 'validated' the discriminatory scoring methods applied to the State Bar Examinations" as representative of identifying candidates with " 'minimal competence' to practice law."

The State Bar subsequently implemented two new programs (the "Cut Score Program" and the "New Graduate Program") designed to assist some examinees who had not passed examinations. The "Cut Score Program" altered the passing score for examinees. The "New Graduate Program" permitted provisional licensure for some new law school graduates. Flinders alleges that these two programs also discriminated against older examinees.

*B. Procedural History*

Flinders filed his complaint against defendants (including the State Bar, the Department, and 13 named individuals)[5] in April 2022. He asserts breach of contract as

difficulty level and scoring of the essay portion (tested in the Attorneys' Examination) with the MBE portion of the examinations.

[5] The complaint named the following individuals: Current and former executive members of the State Bar Donna Hershkowitz, Leah Wilson, Vanessa Holton, and Dag MacLeod; State Bar staff member Ron Pi; current and former members of the Committee of Bar Examiners Esther P. Lin and Alex Chan; and current and former members of the

4

well as six common law tort causes of action generally directed at damages he suffered, including loss of employment, economic prospects, and income, damage to his professional reputation, and emotional distress, as a result of defendants' discriminatory administration and implementation of the attorneys' examination and the New Graduate and Cut Score programs.

Flinders alleges that he submitted a written claim for damages to the State Bar and Department of General Services in May 2021 and received either a written rejection and/or no response within the statutory period. He identifies the SCOCA action and charges filed with the EEOC as related cases. He subsequently filed a notice of related case informing the trial court of the federal action, *Flinders v. State Bar of California* (N.D. Cal., No. 5:22-cv-04072-VKD), filed against the State Bar in July 2022. The federal action is the subject of both Flinders's motion to stay the appeal in this court and the State Bar's motion for judicial notice, which we address, *post*.

Flinders's breach of contract cause of action, as to the State Bar only, alleges that the State Bar breached express and implied agreements (formed when Flinders paid his application and examination fees) to administer and score the examinations in a nondiscriminatory manner according to the MBE scaling process, and to implement the Cut Score program consistent with state and federal anti-discrimination laws. His interference with contractual relations cause of action alleges that defendants interfered with two different contracts: His employment contract with the law firm that employed him, and his contract with the State Bar, under which he paid fees to take the examinations. He alleges that the scoring of the examinations discriminated based on age and thereby interfered with these contracts. His interference with prospective economic advantage cause of action similarly alleges that defendants knowingly interfered with

State Bar Board of Trustees Jason P. Lee, Joshua Perttula, Hailyn Chen, Ruben Duran, and Alan K. Steinbrecher. The complaint also names Tracy Montez, Chief of the Department's Division of Programs and Policy Review.

Flinders's employment prospects through discriminatory scoring of the examinations and administration of the State Bar's programs.

Flinders's fraud cause of action alleges that defendants' representations that the examinations were scored according to the MBE scaling process and measured " 'minimum competence' " were false and made with the intent to deceive Flinders (and other older applicants) to repeatedly attempt and pay for examinations, despite there being "only a negligible possibility of success based arbitrarily on [Flinders]'s age." His "false light defamation" cause of action alleges that, by representing that the examination measured minimum competence and by publishing examination results to the public, defendants impliedly and falsely represented that he lacked such minimum competence by failing to pass the examinations.

Flinders's intentional infliction of emotional distress cause of action alleges that defendants' discriminatory and fraudulent conduct was "extreme and outrageous" and has led him to suffer severe emotional distress. His negligence cause of action alleges that defendants have breached their duties to oversee and administrate the State Bar examinations and programs in a nondiscriminatory manner.

Flinders seeks damages and "order[s]" requiring defendant State Bar to rescore the two examinations Flinders took and to require that administration of future examinations comply with the State Bar's "contractual and other legal obligations to future examinees." Flinders's prayer for relief also seeks nonspecific "[r]estitutionary and non-restitutionary disgorgement" and punitive damages.

Defendants separately demurred to the complaint. The State Bar defendants asserted that (1) the trial court lacked jurisdiction because the Supreme Court "has ' "sole original jurisdiction" over the attorney admissions process,' " (2) the State Bar defendants were immune as a matter of law under the doctrines of judicial and legislative immunity, (3) the State Bar defendants were immune from a damages award under the Government Claims Act, (4) Flinders had failed to timely present his claim to the State

6

Bar Board of Trustees, and certain other causes of action were time barred, and (5) his complaint failed to state facts sufficient to state a claim as to any of the seven causes of action. In support of the demurrer, the State Bar filed a request for judicial notice of the trial court's decision in the SCOCA action sustaining without leave to amend the Supreme Court's demurrer to nearly identical claims as those brought against the State Bar defendants.

In their demurrer, the Department defendants raised similar arguments. They asserted that (1) Flinders had failed to comply with the claim filing requirements of the Government Claims Act, as modified by certain executive orders extending the six-month deadline by 120 days, (2) the Department defendants were immune as a matter of law from Flinders's common law theories of liability, (3) Flinders had not stated a claim for breach of a mandatory duty under the Government Claims Act, (4) the complaint failed to state facts sufficient to state a claim as to the six causes of action asserted against the Department, and (5) the trial court lacked jurisdiction because the Supreme Court has sole original jurisdiction over the attorney admissions and licensing process. In support of the demurrer, the Department filed a request for judicial notice of four executive orders issued by Governor Gavin Newsom between March 2020 and June 2021, which extended by 120 days the statutory time limit under the Government Claims Act for filing a claim for damages against a public entity or its employees.

Flinders filed opposition to the demurrers and sought a stay of the State Bar action pending resolution of the appeal in the earlier filed SCOCA action. Flinders asserted in support of his motion to stay that the demurrer order on appeal in the SCOCA action was "based on the same or similar issues raised" by the State Bar in its demurrer, including "whether the Supreme Court of California has original, sole jurisdiction over all claims relating to the attorney admissions process, whether State Bar Defendants were subject to the federal Age Discrimination in Employment Act and California Fair Employment and Housing Act based on their activity administering the Examinations, and whether activity

pertaining to the discriminatory employment examinations invoked immunity under the Government Claims Act." Flinders argued that a stay would promote the efficient use of judicial and party resources, and that without a stay, multiple duplicative actions—including appeals—could occur.

The trial court set the demurrers for hearing together and adopted its tentative rulings sustaining both demurrers without leave to amend. It declined to continue the matter pending appellate review of the SCOCA action. With respect to the State Bar, the trial court denied the request for judicial notice, finding the trial court's ruling in the SCOCA action had no precedential value and was irrelevant. The court otherwise agreed that it lacked subject matter jurisdiction due to the California Supreme Court's plenary jurisdiction over the attorney admissions process and concluded that even if it had jurisdiction over the claims, the State Bar defendants were immune from liability under the doctrines of judicial and legislative immunity and under the Government Claims Act. As to the Department, the court granted the request for judicial notice of the Governor's executive orders.[6] The court found, for the same reasons expressed in ruling on the State Bar's demurrer, that it lacked subject matter jurisdiction and, furthermore, that the complaint failed to allege facts sufficient to state the asserted causes of action. The court found that Flinders had not sought leave to amend the complaint and there did not appear to be a potentially effective amendment to warrant leave to amend.

The court subsequently entered a judgment dismissing Flinders's action with prejudice and entitling defendants, as the prevailing parties, to an award of statutory costs "if any there are." Flinders timely filed a notice of appeal from the judgment.

---

[6] The Department has filed a motion for judicial notice requesting that this court take judicial notice of the same executive orders addressed in the judicial notice request granted by the trial court. We grant the Department's unopposed motion. (Evid. Code, § 459, subd. (a).)

8

## II. DISCUSSION

Flinders challenges the trial court's conclusions that it lacked jurisdiction over his claims, and that the Government Claims Act (Gov. Code, § 810 et seq.[7] (Act)) and doctrines of legislative and judicial immunity preclude his claims. After the appeal in this matter was fully briefed, Flinders filed a motion in this court titled "appellant Flinders' notice of motion and motion to stay appeal pending related federal case" (capitalization & boldface omitted).

### A. *Motions for Stay and Judicial Notice*

Flinders asks that we stay this appeal pending resolution of his federal action. Separately, but relatedly, the State Bar has filed a motion for judicial notice in connection with its respondents' brief asking that we take judicial notice of the district court's judgment in the federal action.

The record on appeal includes Flinders's complaint in the federal action. Flinders asserted violations of California's Fair Employment and Housing Act (FEHA) and the federal Age Discrimination in Employment Act (ADEA) against the State Bar based on its administration and oversight of the allegedly discriminatory bar examinations. As stated in Flinders's related case notice, the federal action "arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact" as this action.

The federal action is currently pending in the Ninth Circuit Court of Appeals following the district court's entry of judgment against Flinders. (*Flinders v. State Bar of California* (No. 22-17014, app. pending).) On October 3, 2023, the Ninth Circuit issued an order to hold the federal action in abeyance pending the Ninth Circuit's en banc

---

[7] Unspecified statutory references are to the Government Code.

review of another appeal, *Kohn v State Bar of California* (9th Cir. Dec. 6, 2023, No. 20-17316) ___ F.4th ___ [2023 WL 8441781] (*Kohn*)).[8]

The State Bar asks this court to take judicial notice of the not-yet-final district court judgment in the federal action, which postdated the trial court's demurrer proceeding in this case. The State Bar contends the judgment is relevant because it has a preclusive effect on the jurisdictional argument that Flinders makes in this appeal. The State Bar argues that the district court rejected Flinders's arguments concerning the court's subject matter jurisdiction over the ADEA and FEHA claims and concluded his suit was jurisdictionally barred because he had not petitioned the California Supreme Court for review of the denial of his admission to the bar. (*Flinders v. State Bar of California* (N.D. Cal., Dec. 5, 2022, No. 5:22-cv-04072-VKD) 2022 WL 17419552, at *5–6 (No. 22-17014, app. pending).) Flinders does not oppose the request for judicial notice.

We agree with the State Bar that the district court's judgment is a proper subject of judicial notice. (Evid. Code, §§ 452, subd. (d)(2), 459.) However, the State Bar's assertion regarding the arguably preclusive effect of the district court's jurisdictional ruling fails to establish that each of the threshold requirements for the application of issue preclusion is satisfied here. (See *Sosa v. DIRECTV, Inc.* (9th Cir. 2006) 437 F.3d 923, 928; *Calhoun v. Franchise Tax Bd.* (1978) 20 Cal.3d 881, 887; cf. *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507–1508 [noting "five threshold requirements" for the application of issue preclusion].) We deny the State Bar's motion for judicial notice.

---

[8] The Ninth Circuit issued its en banc decision in *Kohn* shortly after oral argument in this case. The decision, which reached only the issue of whether the State Bar is an arm of the state for purposes of sovereign immunity under the Eleventh Amendment of the United States Constitution, does not change our analysis. (*Kohn*, *supra*, ___ F.4th ___ [2023 WL 8441781, at *2, fn. 2].) As of the filing of this opinion, the Ninth Circuit's abeyance order in Flinders's federal action remains in place.

10

Flinders moves to stay the appeal "because many of the same legal issues are pending resolution in this case and in the federal" action, including the State Bar's "liability under federal and state employment discrimination laws" and the jurisdiction of the trial court over the claims. He contends that a stay will reduce the risk of duplicative or inconsistent rulings and avoid redundant hearings on the same issues, including the "potential preclusive effect of any judgment." The State Bar and Department defendants have each filed opposition to the motion to stay.

We deny Flinders's motion to stay the appeal. "[W]hen a federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion but not the obligation to stay the state court action." (*Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 804.) Relevant considerations include discouraging multiple litigation designed solely to harass an adverse party, avoiding conflicts with the courts of other jurisdictions, and deciding whether the rights of the parties can best be determined by the court of the other jurisdiction because of the nature of the subject matter or the stage to which the proceedings in the other court have already advanced. (*Ibid.*; see *Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 215.)

Flinders cites the potentially preclusive effect of a Ninth Circuit ruling on the question of subject matter jurisdiction as support for the requested stay. However, Flinders has not persuaded us that preclusion applies. This action involves additional defendants not named in the federal action, and Flinders has not explained how any preclusive effect would apply to all defendants. Further, he has not shown how a stay would advance any of the typical considerations in granting a stay. The Ninth Circuit's en banc decision in *Kohn*—the basis for the abeyance order in Flinders's federal appeal— bears no direct relationship to the facts or issues involved in this appeal. We decline to exercise our discretion to stay this appeal.

11

*B.  Order Sustaining Demurrers*

In reviewing a ruling sustaining a demurrer without leave to amend, we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.  (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)  "[W]e assume the truth of the properly pleaded factual allegations and the matters properly subject to judicial notice."  (*Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 393–394.)  "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

1.  Subject Matter Jurisdiction

Flinders contends the trial court erred in concluding it lacked subject matter jurisdiction over the action.  He argues the court's ruling wrongly ignores the state constitutional grant of original jurisdiction to the superior courts over tort, employment, and contract claims.  (Cal. Const., art. VI, § 10.)  He further asserts that the California Supreme Court's authority to review individual admissions or disbarment decisions does not strip the superior courts of jurisdiction "over all legal actions relating to the admissions process or foreclose[] an applicant's ability to seek redress before the [s]uperior [c]ourts."

These arguments understate the California Supreme Court's grant of authority and misconstrue the nature of the claims alleged in the complaint.  Our high court does not merely "review" individual admissions (as characterized by Flinders) but rather has

exclusive authority to grant or deny admissions following certification by the State Bar of those applicants who satisfy the admission requirements. (*Sander v. State Bar of California* (2013) 58 Cal.4th 300, 305 (*Sander*).) The State Bar serves as the high court's administrative arm or adjunct in the areas of admissions and discipline of attorneys. (*Ibid.*; see also *Saleeby v. State Bar* (1985) 39 Cal.3d 547, 557 (*Saleeby*).) It is a constitutional entity subject to the California Supreme Court's "expressly reserved, primary, inherent authority over admission and discipline." (*In re Attorney Discipline System* (1998) 19 Cal.4th 582, 607.) Thus, the California Supreme Court "has the sole authority to grant or deny admission to practice law." (*Sander*, at p. 305.) That the Supreme Court "accords great deference" to the recommendations of the State Bar (*ibid.*) does not diminish its inherent and exclusive jurisdiction over the admissions process. (See *Smith v. State Bar* (1989) 212 Cal.App.3d 971, 976 (*Smith*).)

Because the California Supreme Court "controls the admission process as part of its inherent power," that court is the only state judicial venue with jurisdiction to review claims challenging that process. (*Smith*, *supra*, 212 Cal.App.3d at p. 978.) Flinders has not demonstrated that his challenges to the procedures for attorney examinations and/or grading process fall outside the scope of the Supreme Court's authority over the admissions process. (*See id.* at pp. 977–978 [concluding that challenges to the State Bar's administration of admission fees "should be initiated in the Supreme Court under its inherent power and original jurisdiction over the admissions process"]; *Saleeby*, *supra*, 39 Cal.3d at p. 558 [distinguishing direct review in the Supreme Court in matters of discipline and admission from review of State Bar determinations in other areas, such as administration of client security fund reimbursements, that do not involve discipline or admission of attorneys]; see also Bus. & Prof. Code, § 6066 [providing that challenges to State Bar certification denials shall be "reviewed by the Supreme Court"]; Cal. Rules of Court, rule 9.13(d) [setting forth the procedure for review of admissions decisions].)

13

When an unsuccessful applicant, like Flinders, seeks to challenge the State Bar's examination methods and certification recommendations regarding attorney admissions, such a challenge must be made directly by petition to the Supreme Court. (*Saleeby*, *supra*, 39 Cal.3d at pp. 557–558; *Smith*, *supra*, 212 Cal.App.3d at p. 978; see also *Salot v. State Bar* (1935) 3 Cal.2d 615, 617–618.) Therefore, the trial court did not err when it sustained the defendants' demurrers on jurisdictional grounds.

Even assuming arguendo that the trial court had jurisdiction over the claims in the complaint, we agree with the defendants that the trial court did not err in sustaining the demurrer on the alternative grounds that the defendants are immune from the claims in the complaint.

2. The Government Claims Act Precludes Tort Damages Liability

Flinders challenges the trial court's demurrer rulings on immunity. Among other arguments, Flinders contends that Government Claims Act immunity does not apply to unlawful employment discrimination and fraud, including because defendants had a " 'mandatory duty' " under FEHA and the ADEA to refrain from establishing discriminatory employment and licensing examinations.

In making these arguments, Flinders refers generally to "[d]efendants" and does not distinguish between the State Bar's and the Department's demurrers. Flinders maintains "the trial court erroneously ruled that [d]efendants are entitled to judicial and legislative immunity from claims arising out of employment discrimination and fraud" even though the Department did not demur on the grounds of judicial and legislative immunity, and its demurrer was not sustained on that basis. Flinders fails to differentiate among defendants and appears to presume the State Bar and Department defendants are interchangeable entities. We reject this approach, as the State Bar and Department advanced distinct legal arguments in separate demurrers. Nevertheless, we begin our analysis with public entity immunity under the Act, a ground for demurrer advanced by both the State Bar and Department defendants.

14

The Act is "a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts." (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803 (*Quigley*).) It "abolishes common law tort liability for public entities." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899.)

Section 815 provides: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a).) Subdivision (a) of section 815 thus "makes clear that under the [Act], there is no such thing as common law tort liability for public entities; a public entity is not liable for an injury '[e]xcept as otherwise provided by statute.' " (*Quigley*, *supra*, 7 Cal.5th at p. 803.) "This means that the ' "liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care" ' to the plaintiff. [Citations.] 'The law's clear purpose was " ' "not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." ' " ' " (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 428 (*San Mateo*).)

Flinders does not dispute that the Act applies to the State Bar defendants and Department defendants. "The State Bar is a 'public corporation' of which every person licensed to practice law in the state is a member. (Cal. Const., art. VI, § 9.) The State Bar serves 'as an administrative arm of [the California Supreme Court] for the purpose of assisting in matters of admission and discipline of attorneys.' [Citation.] The State Bar's Committee of Bar Examiners administers the requirements for admission to the bar, including the bar examination and the assessment of applicants' moral character, and certifies to [the California Supreme Court] those applicants who satisfy the requirements. [Citation.] (Bus. & Prof. Code, §§ 6046, 6064.)" (*Sander*, *supra*, 58 Cal.4th at pp. 304–

15

305.) The State Bar is thus a public entity under the Act. (See §§ 811.2 [defining public entity]; 900.4.)

So, too, the individual State Bar defendants come under the statute based on their positions as State Bar staff, current and former executive members of the State Bar, current and former members of the Committee of Bar Examiners, and current and former members of the State Bar Board of Trustees. (See §§ 810.2 [defining " '[e]mployee' " within the meaning of the Act]; 811.4 [defining " '[p]ublic employee' "]; see also 81 Ops.Cal.Atty.Gen. 310, 311 (1998) [discussing under what circumstances appointees to state boards or committees are "officers" or "servants" under § 810.2].) The Department is likewise an agency of the State of California (Bus. & Prof. Code, § 100) and public entity (§§ 811.2; 900.4), and Montez, its chief of the division of programs and policy review, is a public employee under the Act (§ 811.4).

Section 815 immunizes the State Bar and Department defendants from Flinders's common law tort claims (his second through seventh causes of action). These causes of action arise from the State Bar's and Department's administration and/or validation of the procedures for gaining admission to practice law in California. His interference causes of action challenge the method of scoring the examinations, claiming defendants were aware of his employment status in California and knew the scoring methods would interfere with his employment relationship and cause a breach of the State Bar's promise to score using the MBE scaling process. His fraud and defamation causes of action challenge the State Bar's characterization of what the examinations measure, and his negligence cause of action challenges defendants' oversight and administration of the examinations as well as the New Graduate and Cut Score programs. His other tort causes of action are entirely derivative of these challenges.

Flinders contends that section 815 does not preclude his tort causes of action because section 815.6 permits liability in this case. Section 815.6 authorizes liability where a public entity fails to discharge a mandatory duty imposed by statute. "Where a

16

public entity is *under a mandatory duty imposed by an enactment* that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (§ 815.6, italics added.)

Flinders contends that defendants were subject to a " 'mandatory duty' " under the FEHA and the federal ADEA. He maintains these statutes "directly apply" to the State Bar and Department as "employers of attorneys, as well as agents of attorney employers, including the Supreme Court of California and State of California, when they establish/validate discriminatory employment/licensing examinations on their behalf."

Flinders's theory is that defendants, as employers and agents of employers, may be liable under FEHA and the ADEA for "denying 'access' to employment or otherwise interfering with the 'privileges of employment' of any 'individuals,' including prospective employees and those employed by or seeking employment with other employers." He argues that " 'mandatory duties' " under the Act apply both to non-discretionary affirmative and prohibitive duties, as exemplified by cases including *Thompson v. City of Lake Elsinore* (1993) 18 Cal.App.4th 49 (*Thompson*) and *Ramos v. County of Madera* (1971) 4 Cal.3d 685 (*Ramos*).

Flinders's reliance on FEHA and the ADEA as the basis for "a mandatory duty imposed by an enactment" (§ 815.6) on defendants is misplaced. Setting aside any question concerning the applicability of these statutes in the absence of an employment relationship between Flinders and defendants, the only "enactment[s]" identified in Flinders's complaint as a basis for his "mandatory duty" argument are section 12944, a provision of FEHA, and 29 Code of Federal Regulations sections 1625.6(c) and 1625.2, which are ADEA regulations. His appellate briefs refer to section 12944 and do not refer at all to the ADEA regulations, instead making only nonspecific references to the ADEA.

17

As he fails to identify any specific mandatory duty the ADEA imposes on defendants, we decide that Flinders has abandoned on appeal any argument concerning the ADEA.

Flinders asserts that section 12944 imposes a mandatory duty on defendants in their capacity as " 'licensing boards,' " such that they may be liable under section 815.6 for the injuries he allegedly suffered. The California Supreme Court has explained that three elements must be satisfied to impose public entity liability under section 815.6. The elements are: "(1) a mandatory duty was imposed on the public entity by an enactment; (2) the enactment was designed to protect against the particular kind of injury allegedly suffered; and (3) the breach of the mandatory statutory duty proximately caused the injury." (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 179 (*B.H.*).) What is more, "[e]ven when a duty exists, California has enacted specific immunity statutes that, if applicable, prevail over liability provisions." (*Ibid.*) We must therefore decide whether section 12944 imposed a mandatory duty on defendants, and if so, whether any specific immunity takes precedence.

Section 12944 provides: "It shall be unlawful for a licensing board to require any examination or establish any other qualification for licensing that has an adverse impact on any class by virtue of its race, creed, color, national origin or ancestry, sex, gender, gender identity, gender expression, age, medical condition, genetic information, physical disability, mental disability, reproductive health decisionmaking, or sexual orientation, unless the practice can be demonstrated to be job related." (§ 12944, subd. (a).)

Flinders asserts that the State Bar and Department are agencies or boards subject to a mandatory duty imposed by section 12944. However, section 12944 does not by its terms apply to the State Bar or the Department. Section 12944 expressly limits its provisions to a " 'licensing board,' " which it defines as "any state board, agency, or authority in the Business, Consumer Services, and Housing Agency [(BCHA)] that has the authority to grant licenses or certificates which are prerequisites to employment eligibility or professional status." (§ 12944, subd. (f).) Neither the State Bar nor the

18

Department have the "authority to grant licenses" (*ibid*.) to practice law. "The State Bar has no power to admit persons to practice law. On the contrary, its failure or refusal to certify is specifically made reviewable" by the California Supreme Court. (*Brotsky v. State Bar* (1962) 57 Cal.2d 287, 300; see Bus. & Prof. Code, § 6064 [admission process].) Moreover, section 12944 does not apply to the State Bar, absent an express declaration by the Legislature that it applies. (Bus. & Prof. Code, § 6001 ["No law of this state restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies, or classes thereof, including, but not by way of limitation, the provisions contained in Division 3 (commencing with [s]ection 11000) [which include section 12944], . . . of the Government Code, shall be applicable to the State Bar, unless the Legislature expressly so declares."]; see *Kohn v. State Bar of California* (N.D. Cal. 2020) 497 F.Supp.3d 526, 538–539 & fn. 4, app. pending, No. 20-17316)[9].)

Even if section 12944 did apply to the State Bar and Department defendants, the statute does not create a " 'mandatory duty' " within the meaning of section 815.6. The first element of liability under section 815.6 "requires that ' "the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." ' " (*B.H.*, *supra*, 62 Cal.4th at p. 180.) " 'Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment "affirmatively imposes the duty and provides implementing guidelines." ' " (*Ibid*.) Put differently, for section 815.6 to apply, "the enactment relied upon must impose a *mandatory* duty, not a discretionary duty; neither must the enactment simply set forth a prohibition or a right, as opposed to an affirmative duty on the part of a government

[9] As noted *ante* in footnote 8, the Ninth Circuit's en banc decision in *Kohn* addressed only the issue of Eleventh Amendment immunity and remanded the case to the original three-judge panel for consideration of the remaining issues.

19

agency to perform some *act*." (*Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1239 (*Clausing*).)

The Legislature's use of mandatory language is not dispositive in deciding whether an enactment imposes a mandatory duty under section 815.6. " 'Instead, the courts have focused on the particular action required by the statute, and have found the enactment created a mandatory duty under section 815.6 only where the statutorily commanded act did not lend itself to a normative or qualitative debate over whether it was adequately fulfilled.' " (*San Mateo*, *supra*, 213 Cal.App.4th at p. 429.) " ' "Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." [Citations.] We examine the "language, function and apparent purpose" of each cited enactment "to determine if any or each creates a mandatory duty designed to protect against" the injury allegedly suffered by plaintiff.' " (*B.H.*, *supra*, 62 Cal.4th at pp. 180–181.)

Section 12944 makes it "unlawful for a licensing board to require any examination or establish any other qualification for licensing that" adversely impacts any protected class, "unless the practice can be demonstrated to be job related." (§ 12944, subd. (a).) While stated in mandatory language ("It shall be unlawful . . ."), section 12944 merely sets forth a general prohibition, not an affirmative duty to perform a certain act. (*Clausing*, *supra*, 221 Cal.App.3d at p. 1239.) The prohibition against discriminatory examination or qualification processes by a licensing body is not an enactment that " ' "affirmatively imposes" ' " a duty by directing the public entity or providing " ' "implementing guidelines." ' " (*B.H.*, *supra*, 62 Cal.4th at p. 180.)

Neither *Thompson* nor *Ramos*, which Flinders cites as support for his contention that FEHA imposes " 'mandatory' " duties on defendants, alters this analysis. Flinders cites *Thompson*, *supra*, 18 Cal.App.4th 49, for the proposition that " 'mandatory' " refers to " 'non-discretionary' " conduct, including what he characterizes as FEHA's non-

20

discretionary prohibition against employing examination or licensing processes with a discriminatory effect. In *Thompson*, the appellate court determined that a city agency's failure to timely issue a certificate of occupancy for a building it had otherwise already approved implicated a mandatory (i.e., non-discretionary) duty according to the relevant local building ordinance. (*Id*. at pp. 57–58.) This conclusion turned on the non-discretionary nature of the occupancy approval at the final stage of the building approval process (*ibid*.) and does not suggest that a general prohibition, like that set forth in section 12944, imposes a mandatory duty. To the contrary, section 12944's broad prohibition against licensing boards utilizing requirements that discriminate is unlike the narrow framework of the local ordinance in *Thompson*, which required performance of a certain act (i.e., issuance of a certificate of occupancy) following the otherwise discretionary approval of the building. (*Thompson*, at p. 58.)

Flinders argues that *Ramos* exemplifies the principle that governmental immunity does not hold for conduct expressly prohibited by statute that is not discretionary, like acts of employment discrimination. In *Ramos*, the defendant county welfare department threatened and ultimately terminated aid to welfare recipients (receiving aid to families with dependent children) who failed to send their children aged 10 years old or older to work in the fields. (*Ramos*, *supra*, 4 Cal.3d at pp. 688–690.) The California Supreme Court rejected the agency's immunity argument based on agency discretion to determine eligibility for aid. It explained that eligibility standards for the welfare program were decided at the state level, and "counties ha[d] the purely ministerial duty of carrying out those decisions" (*id*. at p. 693), such that once eligibility was determined, the county could not impose additional criteria (*ibid*.).

The high court later clarified what it called "broad dictum" in *Ramos* concerning public entities' so called "mandatory duty" not to coerce others to violate general state laws. "Despite some broad dictum in our prior case law (see, e.g., *Ramos*, *supra*, 4 Cal.3d at p. 696), we do not read our cases to hold that a public employee acts beyond his

21

discretion, or breaches a 'mandatory duty,' whenever he or she commits a statutory violation while performing public duties." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 987–988, fn. 8.) Indeed, *Caldwell* rejected the argument that FEHA imposes a mandatory duty which overrides specific immunity under the Act. (*Caldwell*, at p. 987.) The court explained that "[w]hile FEHA establishes a limited category of employment criteria which are *prohibited* to all employers, public and private," it does not impose "any '*mandatory* duty' " on public employers "to take any *specific, affirmative action* in addressing matters of hiring and firing." (*Id*. at pp. 987–988, fn. 8.)

As Flinders has not shown a mandatory duty imposed on defendants under FEHA, we reject his assertion that section 815.6 applies to the causes of action he alleges. Because we conclude there was no actionable mandatory duty curtailing statutory immunity, we need not address the State Bar defendants' assertion that certain specific immunity provisions under the Act also apply. (See *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 348.)

With respect to his fraud cause of action, Flinders contends that defendants are not immune because they are liable under section 822.2. We disagree.

Section 818.8 provides, "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." " 'This section provides public entities with an absolute immunity from liability for negligent or intentional misrepresentation.' " (*Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1252 (*Finch*) [quoting Legis. Com. com. to § 818.8].) Thus, section 818.8 bars Flinders's third cause of action for intentional/fraudulent misrepresentation as to the public entity defendants.

Section 822.2 provides similar immunity for public employees, " 'except that an employee may be held liable if he is guilty of actual fraud, corruption or actual malice.' " (*Finch*, *supra*, 8 Cal.App.5th at p. 1252.) "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not

such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice." (§ 822.2.) Under this section, a public entity is not liable for an employee's intentional misrepresentation, though its employee may be liable if the heightened criteria of "actual fraud, corruption or actual malice" are met. (*Ibid.*)

Flinders argues that section 822.2 applies here and contends that his complaint asserts "actual fraud, corruption or actual malice." (*Ibid.*) He asserts that the trial court erred in finding the alleged misrepresentations were within the scope of the individual defendants' employment.

We reject Flinders's contention as to section 822.2, because his complaint lacks any specific allegations of "actual fraud." (§ 822.2.) "[C]onclusory allegations" will not bring a fraud cause of action against a public entity within section 822.2. (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 649.) To overcome section 822.2 immunity, a plaintiff must allege " ' "in addition to the essentials of common law deceit, a public employee is motivated by corruption or actual malice, i.e., a conscious intent to deceive, vex, annoy or harm the injured party." ' " (*Ibid.*)

Flinders alleged that defendants "willfully and intentionally engaged in fraud and deceit as defined by California Civil Code §[§] 1709-1710 [(which define deceit)]" and made "knowingly false" representations "with the intent to deceive" Flinders and other applicants into paying for repeated attempts to pass the examination "while knowing and concealing" the truth. His defamation cause of action alleged that defendants' representations "publicly and falsely represented" the examinations and use of the MBE scaling process, placing Flinders in a "false light of having failed to demonstrate a 'minimum competence expected of an entry level attorney.' " The allegations specific to individual defendants alleged only that Montez and Pi wrongfully "validated" the discriminatory scoring methods as a legitimate means for distinguishing competent candidates and published their study conclusions on the State Bar Web site. These conclusory allegations do no more than skeletally allege fraud and defamation and are

23

inadequate to bring these causes of action within the "actual fraud" exception set forth in section 822.2.

Furthermore, Flinders has not shown that the challenged conduct is beyond the scope of the individual defendants' employment and thus outside the immunity conferred by section 822.2. He argues, without citing any legal authority, that the individual defendants' representations about the scoring of examinations and validity of examination results could not be in the scope of their employment, since defendants "are employed to serve and protect" the public and the alleged misrepresentations "could not be reasonably intended to serve or protect the public."

"An employee acts within 'the scope of his employment' when he is engaged in work he was employed to perform or when an act is incident to his duty and was performed for the benefit of his employer and not to serve his own purpose." (*Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1750–1751.) "[T]he proper inquiry is not ' "whether the wrongful act itself was authorized but whether it was committed in the course of a series of acts of the [employee] which were authorized by the [employer]." ' " (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 970.)

Flinders's assertion that the individual defendants were operating outside of their duties is unsupported by the pleaded allegations of the complaint, which refer only to conduct related to examination scoring and validation processes. The alleged conduct unambiguously falls within the scope of the individual defendants' positions with the public entities responsible for overseeing and administering the examinations and related programs. Because the allegations concerning the individual defendants pertain to conduct within the scope of their employment and do not support an inference of actual fraud or malice, section 822.2 bars Flinders's fraud cause of action as to the individual defendants.

In sum, Flinders has not alleged a statutory basis under the Act to impose liability for damages on either the public entity or individual defendants for their allegedly

24

tortious conduct. Because statutory immunity under the Act precludes Flinders's common law tort causes of action against the State Bar and Department defendants, it is unnecessary to address defendants' other asserted grounds supporting their demurrers to the second through seventh causes of action, including Flinders's alleged noncompliance with the Act's claim filing requirements and the applicable statutes of limitation.

3. Judicial and Legislative Immunity Bar Flinders's Breach of Contract Claim

Turning to the remaining cause of action for breach of contract, the complaint alleges that as consideration for Flinders's payment of application and examination fees, the State Bar agreed to score the examinations in July 2019 and February 2020 according to the MBE scaling process. The State Bar demurred to this cause of action on grounds including immunity from suit under the doctrines of quasi-judicial and legislative immunity and failure of the complaint to establish the existence of a contract between Flinders and the State Bar. On appeal, Flinders contends the trial court erred in concluding the State Bar defendants are entitled to judicial and legislative immunity. Flinders does not specifically address whether he sufficiently alleged the existence of a contract to state a cause of action, thus abandoning this point on appeal.

Statutory immunity under the Act does not encompass contractual liability. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 740; see *San Mateo*, *supra*, 213 Cal.App.4th at p. 439; *Los Angeles Unified School Dist. v. Great American Ins. Co.* (2010) 49 Cal.4th 739, 748.) By contrast, the doctrine of judicial immunity is absolute. Judicial immunity "bars civil actions against judges for acts they perform in the exercise of their judicial functions," even when those acts are alleged to be erroneous, malicious, or corrupt. (*Holt v. Brock* (2022) 85 Cal.App.5th 611, 620–621 (*Holt*); *Howard v. Drapkin* (1990) 222 Cal.App.3d 843, 851 (*Howard*).)

Quasi-judicial immunity is an extension of the doctrine of judicial immunity to persons other than judges who act in a judicial or quasi-judicial capacity. (*Holt*, *supra*, 85 Cal.App.5th at pp. 620–621.) The United States Supreme Court has explained that the

application of judicial immunity in other (quasi-judicial) contexts "is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." (*Forrester v. White* (1988) 484 U.S. 219, 227 (*Forrester*).) As with judicial immunity, quasi-judicial immunity is intended to protect independent and impartial decisionmaking. (*Howard*, *supra*, 222 Cal.App.3d at p. 853; *Holt*, at p. 622.)

California case authority treats the process for admission to the California Bar as a judicial process. (*Greene v. Zank* (1984) 158 Cal.App.3d 497, 510–511; see *Merco Constr. Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 727 [reiterating that " '[a]dmission to practice is almost without exception conceded everywhere to be the exercise of a judicial function . . . .' "]; *Obrien v. Jones* (2000) 23 Cal.4th 40, 52.) Consequently, "the State Bar and the Committee of Bar Examiners, as arms of the Supreme Court, and their officials, as officers of the Supreme Court, have been afforded quasi-judicial immunity from civil suits for acts performed in the exercise of their duties." (*Howard*, *supra*, 222 Cal.App.3d at p. 853; accord *Greene*, at p. 512.)

Flinders argues that judicial immunity does not apply to administrative acts in administering employment or licensing examinations. He relies on the United States Supreme Court's decision in *Forrester* to support his argument that employment actions by a state court are not "judicial" but "administrative" and are not afforded judicial immunity. (*Forrester*, *supra*, 484 U.S. at p. 227.) In *Forrester*, the court emphasized a functional approach to evaluating immunity claims. (*Ibid*.) It held that an employment action to demote and discharge a court employee was administrative in nature and did not entitle the judge to absolute judicial immunity. (*Id*. at p. 230.)

We disagree with Flinders that the actions challenged by his complaint are wholly administrative in nature—akin to personnel decisions—and thus excluded from the absolute protection conferred by quasi-judicial immunity. The alleged breach of contract, based on the scoring of attorney examinations and denial of Flinders's certification for admission to the State Bar, arose in the State Bar's exercise of its duties with respect to

26

the admission process. The acts of administering and scoring the exams are integral to the State Bar's role (specifically that of the examining committee) in examining applicants for admission to practice law and certifying they have fulfilled the requirements. (Bus. & Prof. Code, §§ 6046, 6064, subd. (a).)

To the extent the State Bar defendants' alleged breach of contract arose from actions undertaken "as an arm of the California Supreme Court" (*Levanti v. Tippen* (S.D. Cal. 1984) 585 F.Supp. 499, 504 (*Levanti*) and as a function of those defendants' duty to examine applicants and administer the requirements for admission to practice law (Bus. & Prof. Code, § 6046, subd. (a), (b)), they are protected under the doctrine of quasi-judicial immunity as activity relating to the admission determination. (See *Levanti*, at p. 504 [concluding State Bar and examining committee members' actions on the plaintiff's Bar application were protected by quasi-judicial immunity].)

Flinders argues that *Levanti* does not support the application of judicial immunity, since the court in that case recognized that certain activity by the State Bar—namely "the promulgation of a general rule relating to the scoring of thousands of bar exams"— cannot be characterized as " 'judicial' " in nature. (*Levanti*, *supra*, 585 F.Supp. at p. 504.) He also asserts that legislative immunity does not apply where there is a violation of the anti-discrimination laws, including the ADEA and FEHA.

Flinders overlooks the *Levanti* court's conclusion that in accordance with the function being served, judicial and legislative immunity both applied to the State Bar defendants. Insofar as the defendants in *Levanti* were "acting on" the plaintiff's individual application, including grading his exam, they were "protected by the same cloak of absolute judicial immunity" as the California Supreme Court. (*Levanti*, *supra*, 585 F.Supp. at p. 504.) On the other hand, where the plaintiff's claim related to the grading process established by the Committee of Bar Examiners, the court held those claims barred by the doctrine of legislative immunity. (*Id*. at pp. 504–505.) As the district court explained, "When promulgating general rules which govern conduct or

27

admission to the state bar, state supreme courts, *and* their administrative arms, act in a legislative rather than a judicial capacity." (*Id*. at p. 504.)

That reasoning applies with equal force in this case. Flinders attempts to distinguish what he calls the "procedurally adopted, phased grading format" challenged in *Levanti* from the "unlawful, concealed, and never-legislated discriminatory scoring practices" at issue here. While we cannot discern from the pleadings whether the scoring policy was the result of formal action (such as adoption by vote) of the examining committee, "there is no such requirement for an act to be legislative in character." (*Mahler v. Judicial Council of California* (2021) 67 Cal.App.5th 82, 105–106 (*Mahler*).) The implementation of a scaling mechanism is consistent with the legislative authority vested in the committee. (Bus. & Prof. Code, §§ 6046, 6046.6, subd. (c).) The scaling/scoring policy applies uniformly across all applicants (and not on an individual or ad hoc basis) and it is published on the Web site of the State Bar as a reflection of its grading policy. These are markers of action that is legislative in character and effect. (*Mahler*, at p. 103 [" 'California courts focus on whether governmental actions "contain matter which is properly to be regarded as legislative in character and effect." ' "].)

Flinders's assertion that the alleged discriminatory scoring methodology violated the ADEA and FEHA do not salvage his breach of contract claim. He does not allege an employment relationship with the State Bar defendants, nor has he articulated a claim in this action under the ADEA or FEHA. Moreover, California cases have upheld the application of legislative immunity to statutory discrimination claims. (See, e.g., *Mahler*, *supra*, 67 Cal.App.5th at pp. 92, 104–106 [legislative immunity shields the Judicial Council and Chief Justice from discrimination claims under FEHA based on the Chief's promulgation of changes to a program for retired superior court judges]; *Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 459–460 [applying legislative immunity under the Act (§ 818.2) to FEHA claims based on a county board of supervisors' dissolution and merger decision impacting a government office].)

28

For these reasons, we conclude the doctrines of judicial and legislative immunity bar Flinders's breach of contract claim based on the State Bar's administration of his admissions process and implementation of a scoring policy.

4. Other Relief

The prayer at the end of Flinders's complaint seeks not only damages but also "order[s]" requiring the State Bar defendants to rescore the two examinations Flinders took and to require that administration of future examinations by the State Bar and Department defendants comply with the State Bar's "contractual and other legal obligations to future examinees." It also seeks "[r]estitutionary and non-restitutionary disgorgement." As Flinders makes no effort on appeal to explain how he could be entitled to any nondamages relief on any of the causes of action that he pleaded in his complaint, he has not shown that the superior court erred in sustaining the demurrer as to any claims for nondamages relief.

5. Leave to Amend

Flinders does not assert that he could amend his complaint to cure its flaws. Nor did he assert a basis for leave to amend in his opposition to the demurrers before the trial court. The trial court therefore did not err in sustaining defendants' demurrers without leave to amend. (*Blank*, *supra*, 39 Cal.3d at p. 318.)

*C. Denial of the Motion to Stay*

Flinders contends the trial court abused its discretion in denying his motion to stay and his request to continue the hearing on the demurrers pending the appeal in the SCOCA action. He asserts the court failed to rule on or hold a hearing on the stay motion and provided no reason for denying the requested continuance, compelling Flinders "to now file this appeal and argue these same issues before this [c]ourt again," wasting judicial and party resources. Defendants counter that the hearing on the stay motion was scheduled for after the hearing on the demurrers, and Flinders ultimately withdrew the motion prior to its hearing. In response, Flinders maintains that the trial court

"inexplicably and improperly scheduled" the stay motion hearing for a date *after* it had already issued its order dismissing this action in full, thereby rendering the stay motion "entirely moot and compelling [Flinders] to remove it from the trial court's calendar himself."

The trial court's written order on defendants' demurrers refers only to Flinders's request for a continuance of the hearing until resolution of the SCOCA appeal, which the trial court denied. The order does not otherwise reference Flinders's motion to stay, which (for reasons not disclosed in the record) had been set for a hearing date that postdated the demurrers hearing. Flinders subsequently filed a request to withdraw the motion to stay. The trial court's minute order on the hearing on the motion to stay, which postdated the order sustaining defendants' demurrers, stated the motion was moot.

Even assuming for the sake of argument that Flinders could establish the trial court abused its discretion by failing to address the later-scheduled motion to stay, or by denying the requested continuance, he cannot show prejudice. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; Cal. Const., art. VI, § 13.) This court, in the prior related appeal, ultimately affirmed the trial court's judgment of dismissal of the SCOCA action. (*Flinders v. Supreme Court*, *supra*, H050203.) Given this outcome, Flinders is unable to meet his burden on appeal of demonstrating prejudicial error due to the trial court's refusal to stay or continue the action pending this court's decision in the prior appeal.

*D. Costs*

Flinders contends the trial court abused its discretion in awarding litigation costs to defendants. However, the judgment did not award costs outright. It stated that defendants, "as the prevailing parties, are entitled to recover statutory costs (Code Civ. Proc., §§ 1032, 1033.5) if any there are." The State Bar maintains in its respondents' brief that because it did not file a memorandum of costs in the trial court, there is no need to address a costs challenge in this appeal. Flinders does not dispute this point in his

reply brief or address the issue of costs at all. Nor is there any evidence in the appellate record to suggest that costs were awarded. We conclude on this record that Flinders has abandoned his appellate claim with respect to costs, which in any event is not supported by an adequate record establishing a cost award. (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.)

## III. DISPOSITION

The judgment is affirmed. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Danner, Acting P.J.

WE CONCUR:

_____

Wilson, J.

_____

Bromberg, J.

**H050562**
*Flinders v. State Bar of California et al.*